Barry J. JACOBSON, Plaintiff–
Appellant–Cross–Appellee,

v.

FIREMAN'S FUND INSURANCE
COMPANY, Defendant–Appellee–
Cross–Appellant.

Nos. 619, 764, Dockets 96–7666(L),
96–7684(XAP).

United States Court of Appeals,
Second Circuit.

Argued Dec. 4, 1996.

Decided April 9, 1997.

Robert D. Lillienstein, Winick & Rich, P.C., New York City (Alan S. Liebman, on the brief), for Plaintiff–Appellant–Cross–Appellee.

Howard S. Veisz, Kornstein Veisz & Wexler, LLP, New York City (David S. Pegno, on the brief), for Defendant–Appellee–Cross–Appellant.

Before: VAN GRAAFEILAND, JACOBS, and CALABRESI, Circuit Judges.

JACOBS, Circuit Judge.

Plaintiff Barry J. Jacobson appeals from an April 26, 1996 final judgment of the United States District Court for the Southern District of New York (Schwartz, *J.*) dismissing his complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Jacobson's suit alleged that defendant Fireman's Fund Insurance Company ("Fireman's Fund") improperly denied payment of claims under his homeowner's policy for damage to his residence. The district court held that Jacobson's action was barred by res judicata because all of his claims either (i) had been litigated and determined adversely to him in a New York state court action that Jacobson commenced against Fireman's Fund in 1990, *see Jacobson v. Fireman's Fund Ins. Co.*, No. 95–CV–9380 (AGS), 1996 WL 204468, at *6 (S.D.N.Y. April 26, 1996), or (ii) could have been but were not asserted by him in that litigation.

On appeal, Jacobson argues that the earlier state court action does not bar his present suit because: (1) the umpire's determination rendered in the state action—the prior ruling that was the basis of the district court's dismissal of his complaint—was never confirmed or entered as a judgment in the state court and therefore lacks res judicata effect; and (2) the rulings of the state court never became "final"—and therefore could not support res judicata—because the parties settled the state action in an agreement containing a limited release that expressly reserved to Jacobson the right to assert his present claims.

We reject both of Jacobson's arguments, and affirm substantially for the reason stated in the district court's opinion, *i.e.*, that Jacobson's prior state court action bars his present claims under the doctrine of res judicata. We write chiefly to address Jacobson's argument, raised for the first time on appeal, regarding the effect of the unconfirmed umpire's determination; this question requires us to reexamine a prior decision of this Court in light of intervening developments in New York state law. Upon that reexamination, we conclude that an unconfirmed umpire's determination in a New York state court proceeding *may* under certain circumstances serve as the basis for res judicata in the federal court. We also affirm the district court's dismissal of Fireman's Fund's motion for sanctions against Jacobson and his counsel.

## BACKGROUND

This Court reviews *de novo* a dismissal for failure to state a claim upon which relief can be granted. In so doing "we accept as true the factual allegations of the complaint, and draw all inferences in favor of the pleader." *Valley Disposal, Inc. v. Central Vermont Solid Waste Management Dist.*, 31 F.3d 89, 93 (2d Cir.1994) (internal quotations and citations omitted).

In March 1989, Fireman's Fund issued a homeowner's policy to Jacobson that insured, *inter alia*, "the dwelling and other structures" on his property in Harrison, New York, against loss up to $1,840,950. 1995

Complaint ¶ 3.[1] The policy was in effect on April 17, 1989, when Jacobson's property was damaged by the negligence of a painting contractor Jacobson had hired to apply wood-stain to his house, decks, fences, etc. 1990 Complaint ¶¶ 2, 3, 13, 14, 20. According to Jacobson's claim, the contractor applied the stain with a "spraying device," failed to protect the non-wood surfaces at the site, and thereby caused more than two million dollars' damage to Jacobson's residence. *Id.* ¶¶ 4, 5, 11–14.

Jacobson timely notified Fireman's Fund of the damage and sought recovery under his policy. Fireman's Fund declined to pay the full amount claimed, 1995 Complaint ¶¶ 5, 6, and instead invoked the policy's mandatory appraisal process [2] to determine the sum payable for losses that were disputed as to either coverage or value.[3] *Jacobson*, 1996 WL 204468, at *1. Jacobson refused to participate in the appraisal process, however, and in September 1990 he commenced an action in the New York State Supreme Court, New York County, seeking the full amount of his claim. *Id.* Upon cross-motions for partial summary judgment, the state court ordered that Jacobson "compl[y] with the appraisal requirement as set forth in the insurance policy," or else the court would grant Fireman's Fund's motion to dismiss his suit. Joint Appendix at 97.

The appraisal went forward, but the first umpire chosen abandoned his duties, left the state without notifying the parties, and never rendered an award. *See Jacobson*, 1996 WL 204468, at *1–*2. Jacobson thereafter re-newed his attempt to terminate the appraisal and proceed with his state action, but the state court denied those efforts (twice) and eventually appointed a new umpire to conduct the continued appraisal process: the Honorable Harold Baer, Jr., who was then affiliated with the Judicial Arbitration & Mediation Services, Inc. *Id.* at *2; Joint Appendix at 102–104, 113–115.

Judge Baer issued two principal determinations, the first on April 7 and the second on August 25, 1994. First he addressed coverage issues, concluding that Jacobson's policy did not cover damage to his trees and shrubs; that Jacobson was not entitled to prejudgment interest; and that Jacobson had to pay his own appraiser and half of the expenses for both the first (abortive) and second appraisals. *Jacobson*, 1996 WL 204468, at *2. Next, Judge Baer determined the amounts of the covered losses, and concluded that Fireman's Fund's unpaid obligation on the claim amounted to over $300,000 in covered losses and over $550,000 in contingent costs (including relocation, moving, and storage expenses, when and if actually incurred). *Id.*

Fireman's Fund paid the remaining covered losses in accordance with Judge Baer's decision. Subsequently, on May 30, 1995, the parties entered into a settlement of Jacobson's still-pending state court action. Fireman's Fund agreed to pay Jacobson the full contingent amount as determined by Judge Baer, and Jacobson agreed to release Fireman's Fund from any further claims for

1. Jacobson's complaint in this action, filed in New York State Supreme Court, New York County, on October 18, 1995, is referred to as "1995 Complaint." The complaint in Jacobson's first Supreme Court action, filed in New York County on or about October 13, 1990, is referenced as "1990 Complaint."

2. The appraisal provision in the policy states that if either party "fail[s] to agree on the amount of loss, either [party] may demand an appraisal of the loss." Joint Appendix at 73. The appraisal process works as follows:

[E]ach party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, [the insured] or

[Fireman's Fund] may request that the choice be made by a judge of a court of record in the state where the residence premises is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to [Fireman's Fund], the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.
*Id.*

3. In addition to his claim for two million dollars in repair costs, Jacobson sought almost $600,000 to fund his "relocation" during the repairs. *Jacobson*, 1996 WL 204468, at *1. Fireman's Fund paid Jacobson more than $516,000, pre-judgment, for undisputed damages. *Id.* at *1 & n. 2.

property damage or living expenses under the policy. *Id.* at *2. The release given in settlement contained a limiting clause "specifically reserving to . . . Jacobson the right to proceed with any other claims including but not limited to extracontractual· liability, bad faith, claims for alleged unfair claim practices and any other additional claims for alleged property damages not previously paid by the company which are specifically reserved." Joint Appendix at 123.

Nothing further occurred in that litigation. Judge Baer's determinations were never confirmed or entered as formal judgments in the state court pursuant to N.Y. C.P.L.R. § 7510 (McKinney 1980) ("The court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified upon a ground specified in section 7511."); Jacobson never objected to Judge Baer's jurisdiction or authority to issue binding determinations, and never pursued a formal action to contest Judge Baer's substantive findings or ultimate conclusion as to the amount of the award. *Jacobson,* 1996 WL 204468, at *5–*6. In particular, Jacobson never appealed the award under C.P.L.R. § 7511(a) (McKinney 1980): "An application to vacate or modify an award may be made by a party within ninety days after its delivery to him."

On October 18, 1995, Jacobson filed the present suit in New York State Supreme Court, New York County. His complaint alleges that Fireman's Fund: (1) committed fraud by "engag[ing] in a series of bad-faith and fraudulent acts intended to convince or coerce [Jacobson] to accept a substantially lower payment in satisfaction of his claim than that to which he was entitled," including the knowing submission of unrealistically low repair estimates to which no reputable contractor could or would agree or act upon, 1995 Complaint ¶¶ 12–17; (2) committed fraud by recommending as umpire for the initial (abortive) appraisal an individual who had prior business dealings with both Fireman's Fund and its appraiser, and who therefore "was not independent and unbiased, although [Fireman's Fund] concealed this fact from [Jacobson] and the [state] Court," *id.* ¶¶ 19–26; and (3) committed a

breach of contract by refusing to pay Jacobson the amount he was due pursuant to the final appraisers' award "unless [he] agreed to waive all other claims against [Fireman's Fund]," thereby violating Fireman's Fund's "obligations under the Policy." *Id.* ¶¶ 28–32.

Each claim alleges that Fireman's Fund's acts were "part of a pattern" of intentional misconduct, *id.* ¶¶ 15, 24, 32, and that as a result of each act Jacobson "was compelled to incur substantial legal fees and costs in litigating and arbitrating his claim and suffered a substantial delay in receiving the full payment to which he was entitled." *Id.* ¶¶ 17, 26, 31. On November 3, 1995, Fireman's Fund invoked federal diversity jurisdiction and removed Jacobson's suit to the district court.

Fireman's Fund then moved in federal court to dismiss the complaint on the ground that the prior state court action left no issues to be litigated, and that Jacobson's suit was barred by res judicata. *Jacobson,* 1996 WL 204468, at *3. The district court granted the motion and dismissed Jacobson's complaint.

As to Jacobson's first "fraud" claim—that Fireman's Fund attempted to "low-ball" him into accepting an unreasonably low settlement of his claims, and thereby compelled him to hire counsel and commence litigation—the district court concluded that the allegations "ar[ose] out of the same set of facts as the State [Court] Action and could have been raised therein." *Id.* at *6. Thus, although the "low-balling" claim asserted a new legal theory and sought additional relief, the claim nonetheless was "barred by the doctrine of res judicata." *Id.*

The district court also rejected Jacobson's claim that Fireman's Fund committed fraud by intentionally recommending a biased umpire during the first appraisal. The court noted that Jacobson had raised essentially the same claim during the state action, without success, and had failed to appeal the state court's denial of that claim through a motion pursuant to C.P.L.R. § 7511 after the determination of the final award. *Id.* Jacobson's "umpire" claim was therefore barred either by collateral estoppel or res judicata, because it arose "from the same set

of facts found in the State [Court] Action and could have been raised therein." *Id.*

Finally, the district court rejected Jacobson's breach of contract claim on the ground that the state court had "repeatedly held that [Fireman's Fund's] insistence that [Jacobson] go through the appraisal process[,] . . . rather than paying [his] entire claim outright, did not constitute a breach of contract." *Id.* Jacobson "either did argue, or could have argued, in the State [Court] Action that [Fireman's Fund] breached its obligations under the [homeowner] Policy," and his suit was therefore barred by res judicata. *Id.*

The district court denied the Fireman's Fund motion for sanctions against Jacobson and his counsel, pursuant to Fed.R.Civ.P. 11. The court "afford[ed] [Jacobson] and his counsel a liberal, if not generous, interpretation as to their motivations and conduct," speculating that the two "m[ight] have commenced this action in the belief that, pursuant to the limited release [Jacobson] signed, [he] had viable claims against [Fireman's Fund] for fraud and breach of contract." *Id.* at *7. The district court cautioned, however, that Jacobson and his counsel had "approached the line that marks the border of Rule 11," and that if Jacobson further pursued these same claims, "the court to which such action is assigned would be well advised to review the entire record of [Jacobson's] litigation against [Fireman's Fund] on any application for sanctions." *Id.*

## DISCUSSION

■ Under the doctrine of res judicata, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Burgos v. Hopkins,* 14 F.3d 787, 789 (2d Cir.1994) (quoting *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980)). "[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in

which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); *see also Burgos,* 14 F.3d at 790. Because the umpire's awards against Jacobson were rendered in the context of a New York state action, "the preclusive effect in federal court of [those] state-court judgment[s] is determined by [New York] law," *Migra,* 465 U.S. at 81, 104 S.Ct. at 896; and our analysis is therefore governed by New York's "transactional approach to res judicata, barring a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos,* 14 F.3d at 790 (citing *Smith v. Russell Sage College,* 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 (1981)).

■ Applying these familiar principles, the district court correctly held that Jacobson's present lawsuit is barred by his prior state action.[4] His claims undeniably "aris[e] out of the same factual grouping" as those he advanced in the state court, and his present suit merely asserts "different legal theories" to obtain "additional relief" from the very same defendant, for the identical injuries.

■ Moreover, Jacobson makes no credible claim of the kind that may render res judicata inapplicable, *i.e.,* either: (i) that "the initial forum did not have the power to award the full measure of relief sought in the latter litigation," *Burgos,* 14 F.3d at 790 (quoting *Davidson v. Capuano,* 792 F.2d 275, 278 (2d Cir.1986)); or (ii) that "formal jurisdictional or statutory barriers" prevented him from "presenting to a court in one action the entire claim including any theories of recovery or demands for relief that might have been available to him under applicable law." *Id.* (quoting Restatement (Second) of Judgments § 26(1)(c) cmt. c (1982)). Jacobson does argue (for the first time on appeal) that he did not have a full and fair opportunity to litigate his bad faith claims in the state action be-

---

**4.** The district court dismissed Jacobson's suit largely on principles of res judicata, but the court did note that some of Jacobson's claims, such as his allegation of a biased umpire, were barred by collateral estoppel as well. *See Jacobson,* 1996 WL 204468, at *6. We find no fault with the district court's reasoning, but confine our discussion to the applicability of res judicata to Jacobson's claims.

cause "[t]he appraisal directed by the State Court was limited to one issue, a determination of the 'amount of loss' under the terms of the Policy." But Judge Baer's first report refutes that contention and makes clear that he was given full power as umpire to decide all relevant issues,[5] including Jacobson's present claims: "Fireman's Fund Insurance Co. and Mr. Barry Jacobson retained me to resolve on a binding basis a disputed coverage issue and the cost and interest issue." Joint Appendix at 117. *See Cine–Source, Inc. v. Burrows,* 180 A.D.2d 592, 581 N.Y.S.2d 9, 10 (1st Dep't 1992) (where scope of arbitration judgment is unclear, "parol evidence not inconsistent with the award may be introduced to show what was litigated before the arbitrator and what was determined by his decision") (citations omitted).

We therefore turn to Jacobson's only plausible argument against the dismissal of his suit on res judicata grounds: that the umpire's award on which the district court based its ruling was never confirmed or entered as a judgment in the state court. Jacobson claims that judicial confirmation of such determinations "is a prerequisite to those determinations becoming final for purposes of res judicata and collateral estoppel."[6]

■ Jacobson raises this argument for the first time on appeal. We have "repeatedly held that if an argument has not been raised before the district court, we will not consider it," *Kraebel v. New York City Dep't of Housing Preservation and Dev.,* 959 F.2d 395, 401 (2d Cir.1992); but "[t]his general rule may be disregarded ... where the issue is purely legal and there is no need for additional factfinding." *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 302 (2d Cir.1996) (citing

*Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994)). We exercise our discretion to consider Jacobson's claim in this case because it raises a "purely legal" question that bears upon the finality and effectiveness of arbitrators' awards, and implicates a prior decision of this Court that may no longer reflect the current state of New York law on that question. *See Calvin Klein Ltd. v. Trylon Trucking Corp.,* 892 F.2d 191, 194 (2d Cir.1989) (Where, as here, "the choice [of New York law is] unchallenged, we must apply both established New York law as well as our belief of how the New York Court of Appeals would rule if this case were before it.").

■ In support of his argument that an unconfirmed arbitrator's determination cannot furnish the basis for res judicata, Jacobson relies primarily on the First Department's opinion in *Allcity Ins. Co. v. Vitucci,* 151 A.D.2d 430, 543 N.Y.S.2d 86, 87 (1st Dep't), *aff'd,* 74 N.Y.2d 879, 547 N.Y.S.2d 841, 547 N.E.2d 96 (1989): "It is the judgment that is entered upon an arbitration award after confirmation that is entitled to res judicata effect."

This Court, in *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 385 (2d Cir.1989), stated nearly the identical principle in denying preclusive effect to an arbitrator's award "which was governed by New York law, [and] was never confirmed and entered as a judgment" in the state court:

Under New York law, it is the judgment entered on an arbitration award that is given preclusive effect in subsequent litigation. *See Springs Cotton Mills v. Buster Boy Suit Co.,* 275 A.D. 196, 88 N.Y.S.2d 295, 298 (1st Dep't), *aff'd,* 300 N.Y. 586, 89

---

5. Although, under New York law, "arbitrators lack authority to award punitive damages notwithstanding that the parties to an arbitration might have privately agreed otherwise," *Belco Petroleum Corp. v. AIG Oil Rig, Inc.,* 164 A.D.2d 583, 565 N.Y.S.2d 776, 784 (1st Dep't 1991) (citing *Garrity v. Lyle Stuart, Inc.,* 40 N.Y.2d 354, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976)), this principle does not limit an arbitrator's power to award compensatory damages for claims (such as "bad faith") as to which punitive damages might also be available. In any event, the record before us offers no support for Jacobson's claim

that Fireman's Fund committed misdeeds warranting punitive damages.

6. Jacobson does not contest the settled rule that "res judicata is applicable to arbitration awards and may serve to bar the subsequent relitigation of a single issue or an entire claim." *Matter of Ranni,* 58 N.Y.2d 715, 717, 458 N.Y.S.2d 910, 444 N.E.2d 1328 (1982); *accord Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 385 (2d Cir. 1989) ("Arbitration proceedings can, but do not necessarily, have preclusive effect on subsequent federal court proceedings.").

N.E.2d 877 (1949). An arbitration award that is not filed and confirmed in an appropriate court is without effect. *Flora Fashions Inc. v. Commerce Realty Corp.*, 80 N.Y.S.2d 384, 386 (Sup.Ct.1948).

Jacobson's argument appears well-grounded under *Allcity* and *Leddy;* but his argument has several weaknesses, and the ground has shifted appreciably. First, the statement Jacobson relies upon in *Allcity* is pure dictum. *See White v. New York*, 161 Misc.2d 938, 615 N.Y.S.2d 811, 814 (N.Y.Ct. Cl.1994). In *Allcity*, the First Department denied as untimely a petition to stay arbitration, adding that "it is not necessary to reach the merits. However, were we to address the merits, we would find that the stay should not have been granted on the ground of res judicata." 543 N.Y.S.2d at 87. The Court of Appeals affirmed *Allcity* on the timeliness ground alone. *See* 74 N.Y.2d at 879, 547 N.Y.S.2d at 841, 547 N.E.2d 96 (1989) ("Assuming without deciding that a stay of arbitration is available ... petitioner's application in this case was untimely.").

*Leddy* is more categorical, but in the eight years since this Court heard argument in *Leddy*, New York law has continued to shift away from the view expressed in that case and in *Allcity*.[7] The Second Department has long taken the position that

> [the] contention that only a judicially confirmed arbitration award may form the basis for the defenses of res judicata and collateral estoppel is without merit.... [These] doctrines are applicable to issues resolved by arbitration where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award.

*Hilowitz v. Hilowitz*, 85 A.D.2d 621, 444 N.Y.S.2d 948, 949 (2d Dep't 1981) (internal citations omitted). The Second Department has consistently reaffirmed the *Hilowitz* holding. *See, e.g., County of Rockland v.*

*Aetna Casualty & Surety Co.*, 129 A.D.2d 606, 514 N.Y.S.2d 102, 103 (2d Dep't 1987) ("The fact that the prior determination was an unconfirmed arbitration award and not a judicial determination does not lessen its collateral estoppel effect.") (citations omitted); *Aetna Casualty & Surety Co. v. Bonilla*, 219 A.D.2d 708, 631 N.Y.S.2d 438, 438–39 (2d Dep't 1995).[8]

*Allcity* notwithstanding, the First Department has (since issuing that opinion) also adopted the reasoning and holding of *Hilowitz*. In *Protocom Devices, Inc. v. Figueroa*, 173 A.D.2d 177, 569 N.Y.S.2d 80, 81 (1st Dep't 1991), the First Department cited *Hilowitz* (among other cases) in ruling that a "prior arbitration award in favor of the respondent, which was not confirmed within one year pursuant to CPLR Section 7510, nevertheless warranted a stay of the subsequent arbitration proceeding initiated by the respondent, premised upon the same claim."

▆▆ It is our duty (as noted above) to apply "our belief" as to how the New York Court of Appeals would rule if this issue were before it. *Calvin Klein*, 892 F.2d at 194. "Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity." *Travelers Ins. Co. v. 633 Third Assocs.*, 14 F.3d 114, 119 (2d Cir.1994). We think that the dictum in *Allcity* is heavily outweighed by the Second Department decisions following *Hilowitz*, and by the First Department's superseding opinion in *Protocom*. Now having the benefit of this authority, we predict that the New York Court of Appeals would resolve this issue in accordance with *Hilowitz* and *Protocom*, and would decide that Judge Baer's determinations are entitled to res judicata effect. We therefore hold, in keeping with the courts of the First and Second Departments, that res judicata and collateral estoppel apply to issues resolved by

---

7. *Allcity*, issued on June 29, 1989, does not cite *Leddy*, which was decided on May 16, 1989. The only authority cited in *Allcity* for the proposition that res judicata applies solely to confirmed arbitration awards is the First Department's 1949 case, *Springs Cotton Mills*, cited in *Leddy*. *See Allcity*, 543 N.Y.S.2d at 87.

8. In addition, two justices dissented from *Allcity* on the basis of *Hilowitz*, stating: "An arbitration award is res judicata on a subsequent claim for arbitration notwithstanding that the award was never confirmed." *Allcity*, 543 N.Y.S.2d at 87 (Smith, J., dissenting).

arbitration "where there has been a final determination on the merits, notwithstanding a lack of confirmation of the award." *See Hilowitz*, 444 N.Y.S.2d at 949 (internal citation omitted).

Our ruling is consistent with related New York authority holding that res judicata applies where, as here, there has been a final disposition on the merits from which no appeal has been taken. *See Slater v. American Mineral Spirits Co.*, 33 N.Y.2d 443, 446, 354 N.Y.S.2d 620, 310 N.E.2d 300 (1974) (despite lack of entry of final judgment, the "dispositions were on the merits . . ., and no appeal having been taken those dispositions became final"); *Litz Enters., Inc. v. Standard Steel Indus., Inc.*, 57 A.D.2d 34, 394 N.Y.S.2d 765, 768 (4th Dep't 1977) ("Nor will a party be denied the benefits of res judicata where a final order on the merits has not been reduced to a formal judgment, if it is on the merits and the time to appeal has expired.") (citations omitted); *Feldstein v. New York City Dep't of Consumer Affairs*, 804 F.Supp. 471, 474–76 (E.D.N.Y.1992) (granting summary judgment on grounds of collateral estoppel "despite the absence of formal entry" of prior court order), *aff'd mem.*, 993 F.2d 1533 (2d Cir.1993). It is undisputed in this case that Jacobson failed to appeal either of Judge Baer's determinations within the 90 day period of limitations of C.P.L.R. § 7511 (or indeed ever). After the time to appeal had expired, those determinations—which plainly were on the merits of the parties' coverage and valuation disputes—became "final" and precluded any further litigation of all issues that were or could have been addressed within the context of that arbitration proceeding.

Our holding contradicts certain statements in *Leddy;* but this Court has an ongoing duty to predict how the Court of Appeals would decide an issue based on the best information currently available, and in this case we now have the benefit of important additional data. Our conclusion that an unconfirmed umpire's determination may (in certain circumstances) have res judicata ef-

fect rests on *Protocom* and the later decisions following *Hilowitz*, authority that was not available when the *Leddy* Court ruled.[9]

▮ Jacobson's remaining claim—that his prior state action never became "final" for purposes of res judicata because the parties' settlement of that action expressly preserved his right to assert his present claims—is easily dismissed. The claim is based on the terms of the limited release, which carves out any claims for "extracontractual liability, bad faith, . . . unfair claim practices," etc. Joint Appendix at 123. The district court ruled, however, that "only those claims that exist under the law may be preserved by an agreement between the parties; a release does not create or resurrect claims that otherwise do not lie." *Jacobson*, 1996 WL 204468, at *8 n. 10. We agree. When the time to appeal Judge Baer's determinations expired, those determinations—albeit unconfirmed—became final and served to bar any subsequent claims grounded on the same transaction or occurrence. The carve-out of certain claims from the limited release prevents Fireman's Fund from interposing the defense of release, but it does not affect the scope of res judicata and collateral estoppel.

Accordingly, based on our holding that an unconfirmed umpire's award is entitled to res judicata effect, and on the district court's analysis and application of res judicata to the facts of this case, we hold that Jacobson's present claims against Fireman's Fund are barred by his prior state court action. We therefore affirm the district court's dismissal of his complaint.

We also affirm the district court's denial of Fireman's Fund's motion for sanctions under Fed.R.Civ.P. 11. Jacobson's claims against Fireman's Fund were substantively weak, so weak as to raise the lively suspicion that this case is a tactical nuisance or shakedown. We agree with the district court that any further pursuit of these same claims by Jacobson would merit rigorous scrutiny. But we cannot say that the district court abused its discretion in refusing an award of sanctions on this record. *See O'Brien v. Alexander*,

---

9. This opinion was circulated to all active members of this Court prior to filing, and none of them has objected to its filing.

101 F.3d 1479, 1488 (2d Cir.1996) ("The test [on review of Rule 11 sanctions] is whether the district court abused its discretion.") (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 399, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990)).

## CONCLUSION

The judgment of the district court dismissing Jacobson's claims and denying Fireman's Fund's motion for sanctions is affirmed in full.