**S. David STULBERG and Bernard N. Stulberg, Plaintiffs,**

v.

**INTERMEDICS ORTHOPEDICS, INC. and Techmedia, Inc., Defendants.**

No. 94 C 4805.

United States District Court,
N.D. Illinois,
Eastern Division.

March 16, 1998.

Kenneth Frederick Levin, Law Offices of Kenneth F. Levin, Chtd., Chicago, IL, for plaintiffs.

Roy E. Hofer, Harold V. Johnson, Brinks, Hofer, Gilson & Lione, Chicago, IL, for, defendants.

## MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiffs Dr. S. David Stulberg and Dr. Bernard N. Stulberg ("the Stulbergs") move to enter judgment pursuant to arbitration and to add Sulzermedica USA, Inc. as a party to this action. Defendants Techmedica, Inc. and Intermedics Orthopedics, Inc. ("defendants") oppose the motion to enter judgment pursuant to arbitration and move the court to vacate the arbitration award. For the reasons set forth below, the court grants both of the Stulbergs' motions and denies defendants' motion.

### Background

The Stulbergs are orthopedic surgeons specializing in joint reconstruction. Defendant Techmedica, Inc. manufactured and sold medical products using the Stulbergs' research and technology under the name Continuum Knee System ("the CKS knee system"). Defendant Intermedics Orthopedics, Inc. ("IOI") manufactured and sold similar medical products that competed directly with the Stulbergs' CKS knee system. At all relevant times, both Techmedica and IOI were subsidiaries of Sulzermedica USA, Inc.

In June 1993, the Stulbergs entered into a license agreement that granted Techmedica the right to use plaintiffs' technology in exchange for royalties ("the license agreement"). (Mar. 31, 1997 Op.[1] at —— ——.) The license agreement required each party to "hold all Confidential Information as a fiduciary, in strict confidence and trust for the disclosing party." (License Ag.[2] ¶ X.) The license agreement also provided that claims for breach of the agreement will be "finally settled" by an arbitrator and that judgment upon the award shall be "binding upon the parties." (License Ag. ¶ R.)

In August 1994, the Stulbergs brought this lawsuit after Techmedica allegedly breached the license agreement. (Defs.' Rep.[3] at 2.) The Stulbergs filed a seven count complaint against defendants Techmedica and IOI. Count I alleged that IOI tortiously interfered with contractual relations by inhibiting the Stulbergs' right to reap the benefits of their invention. Count II alleged that IOI tortiously interfered with contractual relations by disclosing confidential information. Count III alleged that IOI the Lanham Trademark Act based on misrepresentation. Count IV alleged that IOI violated the Lanham Trademark Act by creating confusion as to the source of their product. Count V alleged that IOI violated the Illinois Trade Secrets Act. Count VI sought to enjoin IOI from destroying documents. Count VII sought to enjoin Techmedica from destroying documents. (Mar. 31, 1997 Op. at ——.)

Two months before filing this lawsuit, the Stulbergs invoked the arbitration clause of the license agreement and filed for arbitration against Techmedica and Sulzermedica USA in June, 1994. Former federal district court Judge Frank J. McGarr presided as the arbitrator. (Pls.' Mem.[4] at 2.) Both the

1. "Mar. 31, 1997 Op." refers to this court's March 31, 1997 Memorandum Opinion and Order addressing the parties' motions for partial summary judgment. This ruling is publicly available through on-line legal research databases. *E.g., Stulberg v. Intermedics Orthopedics, Inc.,* No. 94 C 4805, 1997 WL 158317 (N.D.Ill. March 31, 1997). Throughout this opinion, however, the court will cite to the "slip copy" pages of the March 31, 1997 ruling rather than the pagination established by the on-line legal research databases.

2. "License Ag." refers to the licensing agreement between plaintiffs and defendants that is the subject of this lawsuit and the arbitration.

3. "Defs.' Rep." refers to refers to defendants' Reply Memorandum in opposition to Entry of Judgment Pursuant to Arbitration and in Support of Defendants' Cross–Motion to Vacate the Arbitration Award.

4. "Pls.' Mem." refers to plaintiffs' Memorandum in Support of Entry of Judgment Pursuant to Arbitration and in opposition to Defendants' Cross–Motion to Vacate the Arbitration Award.

arbitration before Judge McGarr and the lawsuit before this court proceeded simultaneously. (Defs.' Rep. at 4.) After several weeks of testimony and presentation of nearly 100 exhibits in the arbitration (Pls.' Mem. at 9 n. 6), Judge McGarr issued an opinion resolving the dispute on January 30, 1997.

Judge McGarr's comprehensive opinion detailed findings of fact, reached conclusions of law, and ruled in favor of the Stulbergs. Judge McGarr held that the Stulbergs established all of the necessary elements of tortious interference with contractual relations. (Arb. Judg.[5] at 24–25 ¶¶ 3–7.) Judge McGarr concluded that Sulzermedica USA brought about the willful breach of the license agreement's confidentiality provisions. (Arb. Judg. at 11, 17–18 ¶¶ 45, 76.) He found that Sulzermedica USA directed Techmedica to release confidential information to IOI. Judge McGarr concluded that these actions constituted "express violations of the obligations to maintain such information as a fiduciary, in strict confidence and trust for plaintiffs' benefit, as expressly required by Section X of the 1993 License and Royalty Agreement." (Arb. Judg. at 20 ¶ 80.) Judge McGarr also found that IOI advised Sulzermedica to "liquidate" Techmedica and to "eliminate the CKS Knee System from the marketplace." (Arb. Judg. at 17 ¶ 74.)

In addition to the breach of confidentiality provisions, Judge McGarr found that certain "technology" should have been returned to plaintiffs upon termination of the license agreement. (Arb. Judg. at 27–28 ¶ 18; 29–30 ¶¶ 30, 32.) The "technology" to be returned included clinical data, product specifications, the CKS name, and the FDA approval. (*Id.*) As a results of defendants' conduct, Judge McGarr's January 30, 1997 arbitration award assessed damages in the amount of $5,224,-436.00 (Arb. Judg. at 34.)

Immediately after Judge McGarr's ruling, defendants raised several objections regarding the damage award. The parties briefed these issues, and Judge McGarr again ruled in the Stulbergs' favor. (Arb. Judg. at 2.) On March 19, 1997, Judge McGarr reissued his

original opinion and entered a final order in favor of plaintiffs. On March 24, 1997, the Stulbergs petitioned this court to enter judgment pursuant to Judge McGarr's arbitration award and to add Sulzermedica USA as a party defendant in this lawsuit. (Pls.' Mem. at 2.)

Throughout the arbitration proceedings, the Stulbergs and defendants Techmedica and IOI continued to litigate the lawsuit before this court. The Stulbergs attempted to halt the proceedings before this court by filing a motion to stay defendants, motion for summary judgment. (Defs' Rep. at 3.) Defendants opposed the Stulbergs' motion to stay the proceedings, and the court ruled in defendants' favor, allowing defendants to pursue their motion for summary judgment. (Defs.' Rep. at 3–4.) Both parties moved for partial summary judgment on Count I, and defendants also sought summary judgment on Count III. (Defs.' Rep. at 4.) In our March 31, 1997 ruling, the court granted defendants, motion for summary judgment on Counts I and III and denied the Stulbergs' motion for summary judgment on Count I.

As to Count I, the court found no evidence of a breach of contract related to the Stulbergs' right to reap the benefits of their invention. (Mar. 31, 1997 Op. at ——— ———.) The court found that the factual record did not establish that the license agreement required defendants to return certain assets and "technology" to plaintiffs upon termination of the agreement. (Mar. 31, 1997 Op. at ———, ———.) The court therefore held that the Stulbergs failed to show evidence of the breach of contract element of their tortious interference claim in Count I.

The court's conclusion in this respect was not consistent with Judge McGarr's preceding arbitration judgment. (Defs.' Rep. at 5, 11.) Specifically, Judge McGarr found that the license agreement did require defendants to return certain assets and technology to the Stulbergs upon the license agreement's termination. Thus, the court's summary judgment and the arbitration judgment conflict

---

**5.** "Arb. Judg." refers to Judge McGarr's March 19, 1997 Findings of Fact, Conclusions of Law and Final Judgment.

over whether the license agreement required defendants to return certain assets and technology upon termination of the agreement.

The court's opinion only addressed the breach of contract issue in the context of Count I—the "Stulbergs' right to reap the benefits of their invention." (Mar. 31, 1997 Op. at ———.) In contrast, Judge McGarr also examined the issue based on "Techmedica's leak of confidential information to IOI" as alleged in Count II. Analyzing the facts in that context, Judge McGarr concluded that defendants breached the license agreement by leaking confidential information and by failing to return certain assets and "technology" to the Stulbergs upon the license agreement's termination.

Defendants Techmedica and IOI filed their opposition to the entry of judgment pursuant to arbitration and also filed a cross-motion to vacate the arbitration award. (Pls.' Mem. at 3.) Defendants do not contest the substantive grounds of Judge McGarr's arbitration judgment. In other words, defendants do not claim that Judge McGarr committed errors of law or fact that render his arbitration judgment incorrect. Instead, defendants argue that this court's March 31, 1997 ruling has preclusive effect on the previously rendered but unconfirmed arbitration judgment. (Defs.' Rep. at 11–12.) Thus, even though Judge McGarr issued the arbitration award *before* this court granted summary judgment on Counts I and III, defendants assert that this court's ruling precludes the court from entering judgment on the arbitration. (Defs.' Rep. at 11 n. 7.)

### *Analysis*

#### I. Standard of Review

██ The court must first determine what law governs the standard of review of this arbitration judgment. Plaintiffs assert that California law provides the standard of review, and defendants argue that federal law applies. (Defs.' Rep. at 5.) While state law governs substantive issues, such as contractual liability, federal law governs procedural issues, such as standards of review. *Myers v. County of Lake, Ind.,* 30 F.3d 847, 851 (7th Cir.1994) (citing *Mayer v. Gary Partners & Co.,* 29 F.3d 330 (7th Cir.1994)). In particular, federal law sets forth extensive precedent for judicial review of arbitration awards. *E.g., Baravati v. Josephthal Lyon & Ross, Inc.,* 834 F.Supp. 1023, 1027 (N.D.Ill.1993), *aff'd,* 28 F.3d 704 (7th Cir.1994). In this case, the standard of review is a procedural issue that governs the litigation process and does not grant substantive rights. Consequently, federal law sets forth the standard of review to be applied to this arbitration award.[6]

██ Federal courts extend extraordinary deference to the decisions of arbitrators. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 36–37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *National Wrecking Co. v. International Bhd. of Teamsters,* 990 F.2d 957, 960 (7th Cir.1993) (noting that arbitrators do not serve as "junior varsity trial courts"); *Baravati,* 834 F.Supp. at 1027. Courts are extremely reluctant to disturb the findings of an arbitrator when parties to a contract have agreed to resolve disagreements through arbitration. By bargaining to resolve disputes through an arbitrator, the parties agreed to accept the arbitrator's view of the facts and meaning of the contract.[7] *Misco,* 484 U.S. at 37–38; *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *American Train Dispatchers Ass'n v. Burlington Northern R.R. Co.,* 784 F.Supp. 899, 902 (D.D.C.1992). Con-

---

**6.** Neither party asserts that the standard grounds for vacating the arbitration award under the Federal Arbitration Act, 9 U.S.C. § 10, such as fraud, corruption or partiality, apply in this case. (Defs.' Rep. at 8 n. 4.) In any event, applying that standard of review would not alter the result in this case.

**7.** Moreover, courts apply a narrow standard of review because parties to a contract intend arbitration to be a "final" resolution of disputes. *National Wrecking Co.,* 990 F.2d at 960. Provi-

sions of a contract that describe arbitration as a "final" settlement of disputes would be rendered meaningless if courts applied plenary review to an arbitrator's award. *United Steelworkers of Am. v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Plenary review would undermine the policy behind arbitration: to resolve disputes promptly and inexpensively without resorting to litigation. *Baravati,* 834 F.Supp. at 1027 (citation omitted).

sequently, errors of law or fact are insufficient grounds to set aside an arbitrator's award. *Misco,* 484 U.S. at 38 (noting that courts do not review claims of legal or factual error by arbitrators as they review lower courts); *National Wrecking Co.,* 990 F.2d at 960 (declining to review errors of fact or law).

■■■■ The arbitrator's award, however, must draw its essence from the contract. *Misco,* 484 U.S. at 36 (citing *Enterprise Wheel,* 363 U.S. at 597); *National Wrecking Co.,* 990 F.2d at 960. The arbitrator is confined to interpretation and application of the agreement. *Enterprise Wheel,* 363 U.S. at 597; *National Wrecking Co.,* 990 F.2d at 960. Furthermore, courts will not enforce awards that demonstrate "a manifest disregard" for the applicable law. *Id.* at 961 (citing *Health Services Management Corp. v. Hughes,* 975 F.2d 1253, 1267 (7th Cir.1992) (concluding that "a manifest disregard" of the law occurs if arbitrators "deliberately disregarded what they knew to be the law")); *cf. Baravati v. Josephthal Lyon & Ross, Inc.,* 28 F.3d 704, 706 (7th Cir.1994) (asserting a standard of review *more deferential* than the "manifest disregard" standard, setting aside an arbitrator's award only if the arbitrator "exceeded their powers" pursuant to the Federal Arbitration Act, 9 U.S.C. § 10); *American Train,* 784 F.Supp. at 903 (citations omitted) (concluding that arbitrators may not completely disregard issues previously ruled upon in a prior federal judgment). With these principles in mind, the court addresses the parties' arguments.

## II. Defendants' Motion to Vacate the Arbitration Award

■■ Applying the foregoing standards of review, the court finds no reason to vacate Judge McGarr's arbitration judgment. Defendants fail to show that the Stulbergs procured the arbitration judgment through fraud, corruption, or partiality. Defendants have also not established that Judge McGarr manifestly disregarded the applicable law. Additionally, our own independent review of Judge McGarr's decision reveals no reason to vacate the arbitration judgment. Instead, the court finds that Judge McGarr followed

the law and reached his conclusions by applying the appropriate law to the facts before him. Accordingly, the court denies defendants' motion to vacate the arbitration award.

## III. Defendants' Preclusion Arguments

Having determined that Judge McGarr's March 19, 1997 arbitration award is valid and enforceable, we must now determine what effect this court's subsequent March 31, 1997 summary judgment has on that arbitration judgment. Or, vice versa, what effect the preceding unconfirmed arbitration judgment has on this court's March 31, 1997 ruling. Defendants assert that this court's March 31, 1997 summary judgment precludes entry of the arbitration award under the doctrines of res judicata and collateral estoppel. (Defs.' Rep. at 11–12.) Defendants also contend that the "law of the case" doctrine prohibits this court from entering the arbitration award. The Stulbergs insist that defendants have not established all of the elements of res judicata, collateral estoppel, or law of the case, and therefore argue that the doctrines do not preclude entry of the arbitration judgment.

### A. Waiver of Res Judicata and Collateral Estoppel

Before we consider the parties' arguments, the court must address an issue that neither party raised. Specifically, the court must determine whether defendants have waived their right to assert res judicata and collateral estoppel at this point in the litigation. Based on defendants, prior conduct in this case, the court concludes that defendants have waived their right to now assert the collateral estoppel and res judicata defenses.

■■■■ Whenever parties simultaneously litigate two actions based on the same claim or issue, judgment in one action does not preclude a judgment in the other action if the defendant fails to object. *Imperial Constr. Management Corp. v. Laborers Int'l Union of North Am. Local 96,* 729 F.Supp. 1199, 1205 (N.D.Ill.1990). Res judicata and collateral estoppel are intended to protect defendants from the harassment of multiple suits.

*Torres v. Rebarchak,* 814 F.2d 1219, 1226 (7th Cir.1987); *Imperial,* 729 F.Supp. at 1205. However, by failing to timely object to separate actions, a defendant is deemed to acquiesce in the plaintiff's simultaneous suits and waives any res judicata or collateral estoppel defense. *Imperial,* 729 F.Supp. at 1206; *see also Super Van Inc. v. City of San Antonio,* 92 F.3d 366, 370 (5th Cir.1996) (concluding that res judicata did not apply because defendant acquiesced in the splitting of the claim); *Clements v. Airport Auth. Of Washoe Cty.,* 69 F.3d 321, 328 (9th Cir.1995) (concluding that claim preclusion is an affirmative defense that is deemed waived if not raised in the pleadings); *Rekhi v. Wildwood,* 61 F.3d 1313, 1317 (7th Cir.1995) (noting that failure to plead collateral estoppel constitutes waiver of defense); *Torres,* 814 F.2d at 1226 (finding that the defendant waives the rule against claim splitting if the defendant fails to interpose a timely objection); *Calderon Rosado v. General Elec. Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir.1986) (concluding that the general rule against claim splitting does not apply if defendant implicitly assents).

In this case, defendants have never objected to the simultaneous actions before this court and before Judge McGarr. Neither IOI nor Techmedica pleaded the res judicata or collateral estoppel defenses in this case, even though the arbitration began two months before this lawsuit. In fact, not only did defendants fail to object to the simultaneous proceedings, they opposed the Stulbergs' attempt to halt this court's proceedings pending the outcome of arbitration. (Defs.' Rep. at 3.) Defendants' opposition to stay this case pending the arbitration's outcome suggests that not only did defendants acquiesce, but that they willingly accepted the burden of defending both actions simultaneously. Under these circumstances, the court finds that defendants have waived their right to now assert res judicata and collateral estoppel.

The fact that the concurrent proceeding was an arbitration does not compel a different result. As parties to the arbitration clause, defendants knew that an arbitration judgment is equally as enforceable as the judgment of any court. Nevertheless, defendants voluntarily went forward with both proceedings. The nature of the respective actions does not relieve defendants of their burden to object to simultaneous legal proceedings.

In sum, defendants knew that both this lawsuit and the arbitration were progressing, each at its own pace. Defendants also knew that either this court or Judge McGarr would render some judgment at some point in time. Armed with this information, defendants not only allowed both actions to progress contemporaneously, but insisted that both actions proceed. The court will not permit defendants to pick and choose which judgments will bind them. Defendants knew the risk involved with progressing with two separate litigations and willingly accepted that risk. Now faced with an adverse arbitration judgment, defendants cannot raise preclusion defenses at this late stage to avoid the consequences of their own litigation strategy. The court therefore concludes that defendants waived their right to assert res judicata and collateral estoppel defenses.

### B. Preclusive Effect of the Arbitration Award

An important issue that the parties touched on, but did not fully address, is whether Judge McGarr's March 19, 1997 unconfirmed arbitration award has a preclusive effect on this court's March 31, 1997 summary judgment. (*See* Defs.' Rep. at 11; Pls.' Mem. at 9–10.) Defendants maintain that because this court's summary judgment was rendered by an Article III court, it must have preclusive effect on an earlier unconfirmed arbitration award. In response, the Stulbergs emphasize that the final arbitration judgment came almost two weeks before this court's summary judgment, which suggests that the arbitration award has preclusive effect on this court's ruling, even though the arbitration is unconfirmed. The court's thorough review of the law establishes that Judge McGarr's unconfirmed arbitration judgment should have a preclusive effect on this court's subsequent summary judgment.

The law provides two separate bases for a federal court to afford prior judgments pre-

clusive effect. First, 28 U.S.C. § 1738 holds that state "judicial proceedings ... shall have the same full faith and credit in every court within the United States ... as they shall have by law or usage in the courts of such State." *Id.* Generally speaking, § 1738 requires federal courts to give state court judgments preclusive effect. *University of Tennessee v. Elliott,* 478 U.S. 788, 794, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986). The Supreme Court has held, however, that § 1738 does not apply to unconfirmed arbitration awards or unappealed state administrative proceedings because they are not "judicial proceedings" as § 1738 requires. *See id.* (§ 1738 is not applicable to unreviewed state administrative proceedings); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 477, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) (unconfirmed arbitration decisions are not subject to the mandate of § 1738). Thus, it is clear that an unconfirmed arbitration award does not have preclusive effect on a federal court judgment under 28 U.S.C. § 1738.

■ The other possible basis for giving an unconfirmed arbitration award preclusive effect on a subsequent federal proceeding is a judicially fashioned rule of preclusion. Thus, courts "have frequently fashioned federal common-law rules of preclusion in the absence of a governing statute." *Elliott,* 478 U.S. at 794 (citations omitted); *see also McDonald v. City of West Branch,* 466 U.S. 284, 288, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984) ("[b]ecause federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned.") Therefore, unconfirmed arbitration proceedings "can, but do not necessarily, have preclusive effect on subsequent federal court proceedings." *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 385 (2d Cir.1989). In other words, courts are not **required** to afford previous unconfirmed arbitration awards preclusive effect on later federal proceedings; however, courts **may impose** such preclusion in appropriate cases. *See Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 223, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (holding that *McDonald* establishes that federal courts may determine the preclusive effect to be given to an arbitration

proceeding). The issue therefore becomes when should a federal court afford preclusive effect to a previously rendered but unconfirmed arbitration award.

■ The Supreme Court has repeatedly emphasized that the critical fact courts must consider when fashioning preclusion rules is the effect the preclusion will have on the parties' federal rights. *See Byrd,* 470 U.S. at 223 (in framing preclusion rules to apply to unconfirmed arbitrations, "courts shall take into account the federal interests warranting protection"); *see also Cullen v. Paine Webber Group, Inc.,* 689 F.Supp. 269, 276 (S.D.N.Y.1988) ("the [Byrd] Court cautioned that, in fashioning preclusion rules for arbitration proceedings, the nature of the federal rights involved and the protection afforded them in arbitration must be considered.") The Supreme Court's overriding concern with protecting the parties' federal rights is best illustrated by *McDonald v. City of West Branch,* 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984).

In *McDonald,* the City of West Branch fired McDonald from his job as a police officer. *Id.* at 285. In response, McDonald filed a grievance pursuant to the collective bargaining agreement ("CBA") between the city and the union to which McDonald belonged. *Id.* at 286. McDonald contended that there was "no proper cause" for his termination and that his discharge violated the CBA. *Id.* Pursuant to the CBA, the dispute was arbitrated and the arbitrator ruled against McDonald, finding that just cause supported his termination. *Id.* Rather than appeal the arbitrator's decision, McDonald filed a claim in federal district court under 42 U.S.C. § 1983 alleging that the city fired him for exercising his First Amendment rights. *Id.* A jury returned a verdict partially in McDonald's favor. *Id.*

On appeal, the Sixth Circuit reversed the jury verdict. *Id.* The Court of Appeals held that the parties had agreed to settle their disputes through the arbitration process and that the arbitrator had considered the reasons for McDonald's discharge. *Id.* at 287. Since the arbitration process had not been abused, the Sixth Circuit concluded that Mc-

Donald's First Amendment claims were barred by res judicata and collateral estoppel. *Id.*

The Supreme Court reversed the Sixth Circuit. Unlike the Court of Appeals, the Supreme Court refused to create a judicial rule of preclusion that would allow the unconfirmed arbitration award to have a preclusive effect in a subsequent federal § 1983 claim. *Id.* at 292. The Court reasoned that arbitration "cannot provide an adequate substitute for a judicial proceeding in protecting the federal statutory and constitutional rights that § 1983 is designed to safeguard." *Id.* at 290. The Court reached this conclusion because the arbitration was invoked pursuant to McDonald's CBA. *Id.* at 291. Since the CBA agreement, rather than § 1983, defined the arbitrator's authority, the court held that the arbitrator was bound to follow the CBA and not other public laws such as § 1983. *Id.* at 290–91. Finally, the Court found that the arbitration did not provide an adequate substitute to vindicate McDonald's § 1983 rights because the union had "exclusive control over the 'manner and extent to which a grievance is presented.' " *Id.* The Court reached this conclusion because the "union's interest and those of the individual employee are not always identical or even compatible ... the union may present the employee's grievance less vigorously, or make different strategic choices, than would the employee." *Id.*

This case is clearly distinguishable from *McDonald.*[8] Most importantly, unlike *McDonald,* the rights at issue in this case are privately contracted rights rather than federally protected statutory or constitutional rights. Judge McGarr's arbitration judgment focused exclusively on defendants' contractual obligations to (1) not leak confidential information, and (2) return certain assets and technology when the license agreement terminated. Based on his review of the contract, and weeks of testimony about the contract's meaning, Judge McGarr found that defendants breached both of these contractual obligations. Thus, rather then addressing federally protected rights, Judge McGarr's

arbitration resolved bargained-for rights in a commercial agreement.

When addressing the preclusive effect of an unconfirmed arbitration award that decided privately negotiated commercial rights, courts are not confronted with the responsibility of protecting federal rights. Thus, courts frequently afford unconfirmed arbitrations preclusive effect on subsequent federal proceedings. *See, e.g., Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 267–68 (2d Cir.1997) (giving preclusive effect to an unconfirmed breach of contract arbitration over subsequent federal lawsuit). The Supreme Court recognized in *McDonald* that unlike federal interests, "arbitration is well suited to resolving contractual disputes." *McDonald,* 466 U.S. at 290. Therefore, giving Judge McGarr's breach of contract arbitration award preclusive effect on proceedings before this court, does not impinge upon any federal rights.

Additionally, unlike *McDonald,* Judge McGarr only needed to interpret the parties' contract to resolve the relevant claims. In *McDonald,* the Court expressed concern because the arbitrator was bound to follow the collective bargaining agreement and not McDonald's § 1983 rights. *McDonald,* 466 U.S. at 291. Here, the parties' agreement defines the only rights at issue. Therefore, Judge McGarr was in a position to fully and fairly resolve the parties' rights under their license agreement.

Finally, the *McDonald* Court highlighted the fact that McDonald's union, rather than McDonald himself, retained ultimate control over the nature and extent of his arbitration. *Id.* Based on this fact, the Court appropriately concluded that since the union's interests and McDonald's interests could conflict, the arbitration did not provide an adequate substitute for a judicial proceeding. *Id.* That concern is not present in this case. Rather, these defendants have received adequate legal representation throughout both proceedings and have enjoyed the opportunity to present all relevant arguments on these issues. Unlike the arbitration in *McDonald,*

---

8. For further explanation of *McDonald's* limited holding, *see Gilmer v. Interstate/Johnson Lane* *Corp.,* 500 U.S. 20, 33–35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

this arbitration was not potentially tainted with any conflicting interests.

This case does not present any compelling reasons *not* to afford Judge McGarr's unconfirmed arbitration judgment preclusive effect on the subsequent proceedings before this court. The issues in this case do not implicate federally protected interests.[9] Both parties consented to resolve controversies arising out of the license agreement in arbitration. The contract provides that claims for breach of the agreement will be "finally settled" by an arbitrator and that judgment upon the arbitration award shall be "binding upon the parties." (License Ag. ¶ R.) Both parties received an extensive opportunity to fully litigate the breach of contract issue before Judge McGarr. Judge McGarr carefully considered the facts and did not disregard the law.

Under the facts of this case, the court finds that the previously issued but unconfirmed arbitration award has a preclusive effect on the subsequent proceedings before this court. Since Judge McGarr's March 19, 1997 arbitration award has a preclusive effect on subsequent proceedings in this court, this court now vacates all aspects of the March 31, 1997 Memorandum Opinion and Order that are inconsistent with Judge McGarr's arbitration award.

The court also notes that several other courts have given preclusive effect to unconfirmed arbitration awards where contractual or state law rights are at issue. *See, e.g., Jacobson v. Fireman's Fund Ins. Co.,* 111 F.3d 261, 266–68 (2d Cir.1997) (unconfirmed arbitration precludes subsequent litigation of contract and fraud claims under New York law); *Wellons, Inc. v. T.E. Ibberson Co.,* 869 F.2d 1166, 1169 (8th Cir.1989) (contract case where court stated "[t]he fact that the award in the present case was not confirmed by a court and was modified by a subsequent settlement does not vitiate the finality of the award"); *Drexel Burnham Lambert Group, Inc. v. DBL Liquidating Trust,* 161 B.R. 902, 906–07 (S.D.N.Y.1993) (holding that unconfirmed arbitration award has preclusive

effect under federal common law); *Sewell v. New York City Transit Auth.,* 809 F.Supp. 208, 213–14 (E.D.N.Y.1992) (finding that final judgment entered on an arbitration award is not required for preclusive effect); *Kowalski v. Chicago Tribune Co.,* Nos. 88 C 172 & 88 C 321, 1990 WL 43273, at *5 (N.D.Ill.1990) (noting in breach of contract case that "there is also no question that even an unconfirmed arbitration award is generally entitled to be given preclusive effect"); *Associated Constr. Co. v. Camp, Dresser & McKee, Inc.,* 646 F.Supp. 1574, 1578 (D.Conn.1986) (breach of contract case applying Connecticut law held that "[a]n arbitration award, whether or not sustained by a court judgment constitutes finality for res judicata"); *Monmouth Public Schools v. Pullen,* 141 Ill.App.3d 60, 95 Ill. Dec. 372, 377, 489 N.E.2d 1100, 1105 (Ill. App.Ct.1985) (under Illinois law the confirmation of an arbitration award is not necessary to accord that award finality for res judicata purposes in wage dispute); *Corral v. State Farm Mut. Auto. Ins. Co.,* 92 Cal. App.3d 1004, 155 Cal.Rptr. 342, 347 (1979) (noting that under California law an unconfirmed arbitration award should be protected by res judicata in dispute over contractual insurance coverage); *see also* Ian R. MacNeil, Richard E. Speidel, and Thomas J. Stipanuwich, *Federal Arbitration Law,* § 39.65 ("courts have held repeatedly and authoritatively that confirmation is not required to apply preclusion so long as the award is final under the applicable arbitration rules"). Based on the reasoning employed by these authorities, affording a preclusive effect to the previously rendered but unconfirmed arbitration judgment is entirely appropriate in this case.

The court finds defendants' cited authorities distinguishable from this case because those decisions vacated arbitration judgments decided *after* preclusive court rulings. *See, e.g., Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 985 F.2d 1067, 1068 (11th Cir.1993) (plaintiffs initiated arbitration proceedings after district court granted summary judgment); *Miller Brewing Co. v. Fort*

9. Although the Stulbergs' complaint included federal claims for violations of the Lanham Trademark Act, this ruling in no way affects those claims. Accordingly, giving Judge McGarr's arbitration award preclusive effect does not implicate any federal interests.

*Worth Distrib. Co.,* 781 F.2d 494, 495–96 (5th Cir.1986) (plaintiff instituted arbitration after state court proceedings dismissed for want of prosecution); *Telephone Workers Union of New Jersey v. New Jersey Bell Tel. Co.,* 584 F.2d 31, 32–33 (3d Cir.1978) (arbitration brought after entry of court approved consent decree). In contrast, the arbitration judgment in this case **preceded** the court's March 31, 1997 ruling. Thus, the subsequent court ruling cannot preclude the prior arbitration decision.

The court also finds *SSIH Equipment S.A. v. United States Int'l Trade Comm'n,* 718 F.2d 365 (Fed.Cir.1983) distinguishable. In *SSIH Equipment,* the International Trade Commission ("ITC") declared three patents valid and infringed by SSIH's imported product. *Id.* at 368. Accordingly, the ITC issued an order under 19 U.S.C. § 1337 excluding importation of SSIH's goods. *Id.* About one month later, a federal district court held two of the three patents invalid. *Id.* After learning of the district court's judgment, the ITC voluntarily modified its previous exclusion order to suspend that portion of the previous order relating to the patents the district court invalidated. *Id.* at 369.

The Federal Circuit approved, but did not mandate, the ITC's action. *Id.* at 370–71. The court specifically pointed out that *"the issue of whether the [ITC] had to modify its order ... is reserved. We hold only that there was a justifiable basis for the modification here."* *Id.* at 371 n. 8 (emphasis added).[10] The court also emphasized that the ITC's action was appropriate "given the nature of a § 1337 investigation" and stressed that the ITC has an "obligation to terminate orders." *Id.* at 370 (quoting *SSIH Equipment S.A. v. USITC,* 69 C.C.P.A. 140, 673 F.2d 1387, 1390 n. 8 (1982)). In fact, the court even highlighted that "[t]he dissent's view that the ... litigation could only be brought into the case as an affirmative defense of collateral estoppel by SSIH fails to appreciate that proceedings under § 1337 are in the nature of investigations with only lim-

ited aspects of inter party cases." *SSIH Equipment,* 718 F.2d at 371 n. 8.

In contrast to *SSIH Equipment,* this case does not concern the exclusively federal issues of patent validity and enforceability. Nor does this case invoke the procedural particularities of § 1337 of the Tariff Act of 1930. Rather, this case deals with the applicability of judicially fashioned preclusion rules to a private contract dispute. Additionally, this case arises out of an arbitration judgment that the parties agreed would finally settle their dispute. *SSIH Equipment,* on the other hand, addressed an ITC exclusion order that the law requires be terminated if circumstances change. Finally, *SSIH Equipment* is not persuasive because that court did not hold that the previous ITC order *had* to be modified; rather, the court specifically disavowed such a holding. Any argument that *SSIH Equipment* prohibits this court from giving Judge McGarr's arbitration award preclusive effect is, at worst contrived, and, at best dicta.

In sum, the facts of this case make it appropriate to give Judge McGarr's previous arbitration award preclusive effect over this court's subsequently rendered summary judgment. The court therefore vacates all portions of the March 31, 1997 Memorandum Opinion and Order that are inconsistent with Judge McGarr's arbitration award as precluded by the arbitration judgment. The arbitration award preceded the summary judgment and resolved the issue of whether defendants' failure to return certain assets and technology breached the parties' licensing agreement. The doctrine of collateral estoppel therefore prevents the court from rendering another judgment on that identical issue.

### C. Law of the Case

Defendants also assert that the "law of the case" doctrine prohibits the court from entering judgment on the arbitration award. (Defs.' Rep. at 10.) The law of the case doctrine prevents parties from relitigating the same issues in subsequent stages of the

---

**10.** The *SSIH* court's conclusion is consistent with our holding that federal courts may afford preclusive effect to unconfirmed arbitration awards

when doing so will not endanger either parties' federal rights.

same lawsuit. *Donohoe v. Consol. Operating & Prod. Corp.*, 30 F.3d 907, 910 (7th Cir. 1994). In light of this court's ruling that the arbitration award has preclusive effect on this court's summary judgment, the law of the case doctrine does not apply to this case. By vacating those parts of the March 31, 1997 Memorandum Opinion and Order that are inconsistent with the arbitration judgment, the court has eliminated the possibility of two decisions on the same issue in this case. Accordingly, the law of the case doctrine does not prohibit the court from entering judgment on the arbitration award.

## IV. The Stulbergs' Motion to Add Sulzermedica

Plaintiffs ask the court to add Sulzermedica USA, Inc. as an additional party to this action. (Pls.' Pet.[11] ¶ B.) Defendants do not oppose plaintiffs' motion to add Sulzermedica as an additional party. (Defs.' Opp'n [12] ¶ 1.) Therefore, the court grants the Stulbergs' unopposed motion to add Sulzermedica USA, Inc. as an additional party to this action.

### *Conclusion*

For the reasons set forth above, the court grants plaintiffs, motion for entry of judgment pursuant to arbitration. The court also grants plaintiffs, motion to add Sulzermedica USA, Inc. as an additional party. The court denies defendants' cross-motion to vacate the arbitration award.

---

11. "Pls.' Pet." refers to plaintiffs' Petition for Entry of Judgment Pursuant to Arbitration and Addition of Sulzermedica, USA, Inc. as a Party to this Action.

12. "Defs.' Opp'n" refers to defendants' Opposition to Plaintiffs' Petition for Entry of Judgment Pursuant to Arbitration and Cross–Motion to Vacate the Arbitration Award.