2017 IL App (1st) 161036

No. 1-16-1036

Fifth Division
March 31, 2017

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE GROVES OF PALATINE CONDOMINIUM ASSOCIATION, | ) ) ) | |
| | ) | Appeal from the Circuit Court |
| Plaintiff, | ) | of Cook County. |
| | ) | |
| v. | ) | No. 12 L 005441 |
| | ) | |
| WALSH CONSTRUCTION COMPANY, | ) | The Honorable |
| | ) | Margaret Ann Brennan, |
| Defendant and Third-Party Plaintiff-Appellant | ) | Judge Presiding. |
| | ) | |
| (K & K Iron Works, LLC, | ) | |
| Third-Party Defendant-Appellee). | ) | |
| | ) | |

_____

PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices Hall and Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1        The instant appeal arises from the trial court's dismissal of plaintiff Walsh Construction Company's third-party complaint against defendant K & K Iron Works, LLC (the LLC) on the basis that the LLC was not a mere continuation of the company that had subcontracted for certain construction work with plaintiff. On appeal, plaintiff argues that the LLC was a mere continuation of K & K Iron Works, Inc. (the corporation), and, accordingly, the trial court

erred in dismissing the third-party complaint on that basis. For the reasons that follow, we affirm.

¶ 2                                    BACKGROUND

¶ 3        The instant appeal primarily concerns the relationship between the LLC and the corporation. Accordingly, we set out those facts in detail, and relate other facts only as needed to understand the issues present on appeal.

¶ 4                                    I. Complaints

¶ 5                                    A. Groves Action

¶ 6        On May 17, 2012, the Groves of Palatine Condominium Association filed a complaint against plaintiff concerning alleged defects in the construction of the condominium's four buildings, for which plaintiff served as the general contractor (the Groves action); the complaint was amended twice, on February 27, 2013, and January 14, 2014.

¶ 7        On May 7, 2014, plaintiff filed a third-party complaint against the corporation, alleging that the corporation was engaged in the steel erection and ornamental ironwork business and had engaged in construction operations as plaintiff's subcontractor in connection with the construction of the Groves condominium. The complaint alleged counts for breach of contract, breach of express warranty, breach of the implied warranty of workmanship, and for indemnification.

¶ 8        On September 9, 2014, plaintiff filed a motion for a default judgment against the corporation due to the corporation's failure to file an appearance or responsive pleading to the third-party complaint.

¶ 9        On January 5, 2015, plaintiff filed a motion for leave to file a third-party complaint against the LLC and, on January 22, 2015, plaintiff filed a third-party complaint against the

LLC. The complaint alleged that the corporation had been engaged in the steel erection and ornamental ironwork business and performed construction operations in connection with the construction of the Groves condominium. The complaint further alleged that the corporation had been involuntarily dissolved in 2012, and that the LLC "was formed in 2011 and is merely a continuation of the business of [the corporation]." The complaint then set forth the same counts for breach of contract, breach of express warranty, breach of the implied warranty of workmanship, and indemnification, adding to each count the allegation that the LLC was "merely a continuation of" the corporation and therefore was liable to plaintiff for the corporation's breaches.

¶ 10       On March 11, 2015, the LLC filed its appearance and, on April 3, 2015, filed an answer and affirmative defenses to plaintiff's third-party complaint in which it denied being a mere continuation of the corporation. The LLC also argued that the complaint should be dismissed due to its affirmative defenses of the statute of limitations and the fact that the LLC was not the successor entity to the corporation.

¶ 11                                      B. Columbian Action

¶ 12       At the same time as the Groves action, similar litigation was proceeding on a separate construction dispute. While this second action is not the subject of the instant appeal,[1] its resolution affects the analysis in the instant appeal, so we relate the facts of that action where necessary.

¶ 13       On February 4, 2013, the Columbian Condominium Association filed a complaint against plaintiff concerning defects in the construction of a condominium building, for which plaintiff served as the general contractor (the Columbian action).

---

[1] Plaintiff had originally filed an appeal concerning this action but settled during the pendency of the appeal and voluntarily dismissed its appeal.

¶ 14    On February 3, 2015, plaintiff filed a third-party complaint against the LLC, alleging that the corporation had been engaged in the steel erection and ornamental ironwork business and performed construction operations in connection with the construction of the Columbian condominium. The complaint further alleged that the corporation had been involuntarily dissolved in 2012, and that the LLC "was formed in 2011 and is merely a continuation of the business of [the corporation]." The third-party complaint alleged counts for breach of contract, implied indemnity, breach of express warranty, breach of the implied warranty of workmanship, indemnification, and negligence. All counts were based on the corporation's actions, but alleged that the LLC "is merely a continuation of [the corporation] and is liable to" plaintiff for the corporation's actions.

¶ 15    On the same day, plaintiff filed an almost-identical third-party complaint against the corporation, omitting only the allegations concerning the LLC.

¶ 16                    II. Motion to Dismiss and Exhibits

¶ 17                        A. Motion to Dismiss

¶ 18    On June 17, 2015, the LLC filed a motion to dismiss plaintiff's third-party complaint in the Groves action pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)). The LLC argued, first, that it was not liable for any alleged negligence by the corporation because it was not the mere continuation of the corporation. The LLC argued that it was formed in 2011, well after the construction of the Groves condominium, and did not participate in the design or construction of the Groves condominium. The LLC explained that the corporation had been purchased in September 2006 by K & K Iron Works Holding, Inc. (holding company), which was the sole shareholder of the corporation until 2011. On June 21, 2011, the LLC purchased the assets of the

corporation and specifically excluded the corporation's liabilities in the asset purchase agreement; neither the corporation nor the holding company received any interest in the LLC under the asset purchase agreement. The LLC also argued that at the time of the purchase, the majority owner of the LLC was not an employee, officer, or board member of either the corporation or the holding company.

¶ 19 The LLC additionally argued that the third-party complaint should be dismissed because plaintiff filed its third-party complaint against the LLC after the expiration of the two-year statute of limitations. Accordingly, the LLC argued that the complaint should be dismissed as time-barred.

¶ 20 B. Affidavit

¶ 21 Attached to the motion to dismiss was the affidavit of Jerry Kulhanek, the LLC's manager. In the affidavit, Jerry explained that the corporation was formed in 1976 as K & K Ornamental Iron Works, Inc., with Karl J. and Jaroslava Kulhanek as the sole shareholders; the articles of incorporation were amended in 1990 to change the corporate name to K & K Iron Works, Inc. Between 1991 and 1998, Karl J. and Jaroslava transferred their shares to Karl F. Kulhanek (Karl) and Jerry; by August 1999, Karl and Jerry were the corporation's sole shareholders.

¶ 22 In September 2006, the corporation was sold to the holding company. Prior to the transaction, H.I.G. Iron Works, Inc., was the sole owner of the holding company, and neither Karl nor Jerry was ever a shareholder or otherwise held any ownership interest in H.I.G. Iron Works, Inc. Pursuant to the terms of the stock purchase and contribution agreement, Karl and Jerry each acquired 125 common shares of the holding company by selling their capital stock in the corporation and by contributing their remaining shares of the corporation to the

holding company. Contemporaneously with contributing their shares, the holding company paid the cash purchase price to Karl and Jerry and issued the 125 shares as rollover equity from the sale and transfer of their common shares of the corporation to the holding company. Thus, upon the sale of the corporation to the holding company, the shareholders of the holding company were: H.I.G. Iron Works, Inc. (750 common shares, or 75% interest); Karl (125 common shares, or 12.5% interest); and Jerry (125 common shares, or 12.5% interest). In 2007 and 2009, the holding company issued common shares to Keven Breen twice, for a total of 20 common shares.

¶ 23    On December 31, 2009, Jerry resigned as an employee of the corporation and on May 28, 2010, Jerry resigned from his position on the corporation's board of directors.[2]

¶ 24    On May 28, 2010, the holding company issued a total of 342 shares of preferred stock to four different entities; neither Jerry nor Karl ever had any ownership interest in any of the entities. At approximately the same time, the holding company and shareholders executed an amended and restated stockholders agreement, pursuant to which five individuals were elected as directors of the board of the holding company; Karl was elected as a board member, but Jerry was neither a director, officer, or employee of the holding company and played no role in managing the business of the holding company.

¶ 25    On October 18, 2010, the holding company issued an additional 12,872 common shares to H.I.G. Iron Works, Inc., diluting Karl's and Jerry's 125 common shares to a 0.9% ownership interest in the holding company.

---

[2] In his deposition testimony, discussed in greater detail below, Jerry testified that the statement that he resigned from the corporation's board of directors should have stated that he resigned from the holding company's board of directors, as the corporation did not have a board of directors.

¶ 26      By 2011, the corporation was in a period of financial difficulty and became incapable of meeting certain financial obligations, including to its principal lender, Fifth Third Bank, and it was unable to obtain new bonds for bond-required projects. Fifth Third Bank threatened to foreclose on its loan to the corporation. Accordingly, the corporation initiated a search for a buyer to whom it could sell its assets to help satisfy its financial obligations.

¶ 27      On June 6, 2011, the LLC filed its certificate of formation; at that time Jerry owned 100% of the membership units of the LLC and had formed the LLC for the purpose of purchasing the corporation's assets through a sale supervised by Fifth Third Bank. On June 21, 2011, Jerry granted a 5% membership interest in the LLC to Solebay Holdings, LLC, a company affiliated with certain of the holding company's preferred shareholders, in exchange for Solebay Holdings, LLC's approval of the sale.

¶ 28      In connection with the Fifth Third Bank-supervised sale, on June 21, 2011, the LLC purchased the assets of the corporation pursuant to an asset purchase agreement. Under the terms of the asset purchase agreement, the LLC acquired certain specified assets of the corporation but expressly excluded the corporation's liabilities. At the time of the sale, the holding company was the sole shareholder of the corporation and had been so since 2006.

¶ 29      On December 31, 2013, Solebay Holdings, LLC, sold its 5% membership interest in the LLC to Jerry's wife; Jerry and his wife currently own 100% of the membership units of the LLC. The holding company had no ownership interest, and had never held any ownership interest, in the LLC. Additionally, other than Jerry, none of the owners of the holding company own or had ever owned a membership interest in the LLC, and none of the officers or directors of the holding company were officers or directors of the LLC.

¶ 30    Attached to Jerry's affidavit was, *inter alia*, a copy of the asset purchase agreement between the corporation and the LLC. Among other enumerated assets, some of the assets purchased included: all of the corporation's inventory; all leasehold interests as lessee of all real property leased to the corporation; all intellectual property, including all goodwill associated with the intellectual property; all customer lists, customer records and information, and all books and records; all sales and promotional materials; and "all other rights, title and interest in any and all assets owned by [the corporation] or otherwise used by [the corporation] in the Business." The asset purchase agreement also provided that the LLC would "assume and agree to discharge and perform the following (and only the following) liabilities of [the corporation]," followed by a list of liabilities the LLC agreed to assume.

¶ 31                        C. Supplement to Motion to Dismiss

¶ 32    On January 27, 2016, the LLC filed a supplement to its motion to dismiss plaintiff's third-party complaint, alleging that on January 22, 2016, the trial court in the Columbian action had granted the LLC's motion to dismiss in that case, finding that plaintiff had not established, and could not establish, that the LLC was the mere continuation of the corporation as required for successor liability. The LLC requested that the trial court in the Groves action "adopt this opinion in its consideration of the Motion."

¶ 33    Attached to the supplement was a copy of the trial court's opinion in the Columbian action. In that opinion, the court found that the LLC had sufficiently demonstrated that the LLC was not a mere continuation of the corporation and found that there was no identity of ownership between the corporation and the LLC. Therefore, the court found that the general rule of successor nonliability applied and granted the LLC's motion to dismiss the third-party complaint with prejudice.

¶ 34                                 III. Response and Exhibits

¶ 35                                       A. Response

¶ 36        On February 2, 2016, plaintiff filed a response to the LLC's motion to dismiss, arguing that the LLC was the mere continuation of the corporation and further arguing that the filing of the third-party complaint against the LLC related back to the filing of the third-party complaint against the corporation. First, plaintiff argued that there was a continuity of stock ownership between the two companies, claiming that Jerry "has retained some ownership in [the corporation] or its parent shell corporation continuously since 1999, and *** now owns 95% of [the LLC]." Plaintiff also argued that the LLC conducted the same business and operated out of the same two locations as did the corporation, a majority of the LLC's current employees worked for the corporation, and the corporation's president became the president of the LLC immediately after the 2011 sale. Plaintiff argued that these factors weighed in favor of a finding that the LLC was the mere continuation of the corporation. Finally, plaintiff argued that the LLC was holding itself out as the successor entity of the corporation by listing several projects that the corporation had completed on the LLC's website.

¶ 37                                 B. Deposition Transcript

¶ 38        Attached to plaintiff's response was the transcript of Jerry's discovery deposition in the Columbian action. Most of the deposition testimony was consistent with Jerry's affidavit that had been attached to the LLC's motion to dismiss. We highlight here only the additional relevant testimony.

¶ 39        Jerry testified that at the time he and Karl became the sole owners of the corporation, they were the only officers of the corporation, with Jerry serving as secretary and Karl as president; there was no board of directors. They primarily operated out of an office and

9

fabrication facility on Lawndale Avenue in McCook, but also used a small building and yard on 53rd Street in McCook and one on California Street in Chicago. All three facilities were leased; the two McCook properties were leased from F&WK Properties, and the Chicago property was leased from 3123 South California, LLC. F&WK Properties was owned at the time by Jerry and Karl and was later owned by Jerry and his wife, and 3123 South California, LLC, was owned by Jerry and his wife, Karl and his wife, and Jaroslava, their mother. Neither one of those companies was included in the sale of the corporation in 2006. The LLC currently leased the two McCook properties and operated out of those facilities.

¶ 40    Jerry testified that he and Karl decided to sell the corporation in 2006 because the business was "pretty much getting too big to handle." The corporation was not in any financial difficulty at the time. The corporation was sold for $30 million to H.I.G. Capital, which owned the holding company. After the sale, Jerry remained involved in the corporation's business, in "pretty much [an] advisory role," and also had a seat on the holding company's board of directors. Jerry "assume[d]" that immediately after the sale of the corporation, Karl remained president and Jerry remained secretary of the corporation; both were still involved in the day-to-day operation of the corporation and would still go there every day. Within a few months of the sale, H.I.G. Capital "brought on some other people," including a chief financial officer (CFO), a president, and a chief operating officer (COO). None of those individuals had previously worked for the corporation.

¶ 41    Jerry testified that after purchasing the corporation, the holding company was looking to acquire additional companies. The goal of H.I.G. Capital's acquisition of the corporation through the holding company was to "buy a few more and then sell it as a package." Jerry

was involved in the process of looking into other companies, but, as far as he knew, the holding company ultimately did not acquire any other companies.

¶ 42     Jerry testified that he resigned from the corporation in 2009, prior to which he was in an advisory role in which he was not very involved in the business; he was no longer going there on a daily basis. Jerry testified that the time he spent at the corporation decreased over the last few months he was there and that he resigned because he "[j]ust wanted to do something else." Jerry explained that it was "different dealing with" the people that H.I.G. Capital had brought into the corporation's leadership because "they ran the business a different way" than he and Karl had.

¶ 43     Jerry testified that he learned in 2011 that the corporation was having financial difficulty and the holding company was seeking to sell the corporation. He explained that he learned that the holding company was interested in selling because his companies owned the property that the corporation leased, so "we were drawing up leases" and the holding company "had a couple other buyers that were interested," including "[o]ne of them [that] got real[ly] serious to the point where we had a lease in place and everything pretty much ready to go for them, and I believe they backed out at the last minute." After the deal with the other company fell through, the holding company's CFO contacted Jerry to find out if he would be interested in purchasing the corporation's assets, and Jerry formed the LLC for that purpose. Jerry's understanding was that he was purchasing "the stated assets and the stated liabilities that are in the agreement."

¶ 44     Jerry testified that the current CFO of the LLC was Clark Roemmich, who had worked for the LLC since 2011. Roemmich never worked for the corporation. The head salesman for the LLC was Robert Sullivan, who had also been involved with sales at the corporation; Jerry

testified that Sullivan's official title at the LLC was "president," and that he had been president of the corporation, as well. Jerry further testified that a number of the LLC's current employees had at one time worked for the corporation.

¶ 45 Jerry testified that the LLC's website had a reference to a "tradition of quality and integrity since 1977" and had photos of several projects that the corporation, not the LLC, had completed. Jerry explained that the photos were used "to show them what jobs we could do."

¶ 46                                                    IV. Reply

¶ 47 In its reply, the LLC argued that plaintiff was collaterally estopped from asserting the "mere continuation" theory of successor liability by the trial court's dismissal of the complaint on that basis in the Columbian action.

¶ 48                                           V. Trial Court Ruling

¶ 49 On March 16, 2016, the parties came before the trial court on the LLC's motion to dismiss and the trial court found that "[t]he evidence that was presented before me is that, I do not find that K and K, LLC, is a continuation of K and K Iron Works, Incorporated." The court did not reach the statute of limitations issue or rely on collateral estoppel. Accordingly, the trial court granted the LLC's motion to dismiss with prejudice and also found there was no just reason for delaying appeal or enforcement of its order.

¶ 50 On April 13, 2016, plaintiff filed a notice of appeal, and this appeal follows.

¶ 51                                                    ANALYSIS

¶ 52 On appeal, plaintiff argues that the trial court erred in finding that the LLC was not the "mere continuation" of the corporation and dismissing the third-party complaint against the LLC. A motion to dismiss under section 2-619 admits the legal sufficiency of all well-

pleaded facts but allows for the dismissal of claims barred by an affirmative matter defeating those claims or avoiding their legal effect. *Janda v. United States Cellular Corp.*, 2011 IL App (1st) 103552, ¶ 83 (citing *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006)). When reviewing a motion to dismiss under section 2-619, "a court must accept as true all well-pleaded facts in plaintiffs' complaint and all inferences that can reasonably be drawn in plaintiffs' favor." *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). Additionally, a cause of action should not be dismissed under section 2-619 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 277-78 (2003). For a section 2-619 dismissal, our standard of review is *de novo*. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006); *Morr-Fitz, Inc. v. Blagojevich*, 231 Ill. 2d 474, 488 (2008). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Additionally, even if the trial court dismissed on an improper ground, a reviewing court may affirm the dismissal if the record supports a proper ground for dismissal. *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 261 (2004) (when reviewing a section 2-619 dismissal, we can affirm "on any basis present in the record"); *In re Marriage of Gary*, 384 Ill. App. 3d 979, 987 (2008) ("we may affirm on any basis supported by the record, regardless of whether the trial court based its decision on the proper ground").

¶ 53    As an initial matter, we consider the LLC's argument that plaintiff's claim that the LLC was the "mere continuation" of the corporation is barred by collateral estoppel. "The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling

fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction." *Nowak v. St. Rita High School,* 197 Ill. 2d 381, 389-90 (2001). "The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit, but the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which *might* have been litigated and determined." (Emphasis in original.) *Nowak,* 197 Ill. 2d at 390. "[R]*es judicata,* while similar to collateral estoppel, deals with the same claim or *cause of action,* while collateral estoppel deals with identical *issues.*" (Emphases in original.) *Illinois Health Maintenance Organization Guaranty Ass'n v. Department of Insurance,* 372 Ill. App. 3d 24, 41 (2007). "[T]he minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Gumma v. White,* 216 Ill. 2d 23, 38 (2005); *Hurlbert v. Charles,* 238 Ill. 2d 248, 255 (2010); *State Building Venture v. O'Donnell,* 239 Ill. 2d 151, 158 (2010). "Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak,* 197 Ill. 2d at 390-91. Additionally, "[e]ven where the threshold elements of the doctrine are satisfied and an identical common issue is found to exist between a former and current lawsuit, collateral estoppel must not be applied to preclude parties from presenting their claims or defenses unless it is clear that no unfairness results to the party being estopped." *Talarico v. Dunlap,* 177 Ill. 2d 185, 191-92 (1997).

¶ 54    In the case at bar, the LLC argues that the trial court's dismissal, with prejudice, of plaintiff's third-party complaint in the Columbian case operates to preclude relitigation of the issue of successor liability in the instant appeal because plaintiff has chosen not to appeal that decision.[3] However, the LLC's arguments concerning collateral estoppel fail to address the purpose of the doctrine, which is to prevent relitigation of issues previously decided by the court. See *Nowak,* 197 Ill. 2d at 389-90 ("The doctrine of collateral estoppel applies when a party, or someone in privity with a party, participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question material to the determination of both causes has been adjudicated against that party in the former suit by a court of competent jurisdiction."). Here, there is no issue "previously decided" by the court in a "former suit." Instead, the same issue was being simultaneously litigated before two trial courts; both courts were presented with the same evidence and arguments at approximately the same time. See *Werderman v. Liberty Ventures, LLC*, 368 Ill. App. 3d 78, 84 (2006) (finding no collateral estoppel when there was a joint bench and jury trial and noting that "logically, because the doctrine is rooted in the idea of preventing *relitigation* of a claim, the fact that the trial court is considering the same evidence as the jury at the same time the jury is hearing it does not implicate the doctrine of collateral estoppel" (emphasis in original)). Indeed, the LLC's motions to dismiss the third-party complaint in both the Groves action and the Columbian action were filed on the same day. Thus, applying collateral estoppel here would not prevent relitigation of any issue, as the issue of successor liability was fully litigated before both courts.

---

[3] As noted, plaintiff initially chose to appeal that decision, which was consolidated with the instant appeal, but ultimately settled its dispute and dismissed that appeal. Thus, the trial court's dismissal of the Columbian case finally terminated the LLC's involvement in that case.

¶ 55    Furthermore, the LLC did not object to simultaneously litigating the issue of successor liability before two different courts and only raised the issue of collateral estoppel once it received a favorable decision in one of the cases. Courts have found that "[w]henever parties simultaneously litigate two actions based on the same claim or issue, judgment in one action does not preclude a judgment in the other action if the defendant fails to object." *Stulberg v. Intermedics Orthopedics, Inc.*, 997 F. Supp. 1060, 1064 (N.D. Ill. 1998). That conclusion is founded on the theory that "[r]es judicata and collateral estoppel are intended to protect defendants from the harassment of multiple suits. [Citations.] However, by failing to timely object to separate actions, a defendant is deemed to acquiesce in the plaintiff's simultaneous suits and waives any res judicata or collateral estoppel defense. [Citations.]" *Stulberg*, 997 F. Supp. at 1064-65. We find this reasoning persuasive to the situation present in the instant case, and find that collateral estoppel does not apply to preclude plaintiff's arguments on appeal.

¶ 56    Turning, then, to the merits of plaintiff's argument on appeal, plaintiff argues that the trial court erred in finding that the LLC was not the "mere continuation" of the corporation. We note that plaintiff focuses much of its argument on the trial court's "fail[ure] to consider and appreciate" certain facts. However, these arguments are, to a large extent, irrelevant to our analysis, as "we review the correctness of the trial court's result rather than the correctness of its reasoning." *In re Marriage of Ackerley*, 333 Ill. App. 3d 382, 392 (2002). Furthermore, as noted, our review of the trial court's judgment is *de novo*, meaning that we perform the same analysis that a trial judge would perform and give no deference to the trial court's conclusions. See *Khan*, 408 Ill. App. 3d at 578. Accordingly, we turn to an examination of the law of successor liability.

¶ 57    "The well-settled general rule is that a corporation that purchases the assets of another corporation is not liable for the debts or liabilities of the transferor corporation." *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997). However, "[t]here are four exceptions to the general rule of successor corporate nonliability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations." *Vernon*, 179 Ill. 2d at 345. The third exception is the only exception at issue in the case at bar.

¶ 58    "The continuation exception to the rule of successor corporate nonliability applies when the purchasing corporation is merely a continuation or reincarnation of the selling corporation. [Citation.] In other words, the purchasing corporation maintains the same or similar management and ownership, but merely 'wears different clothes.' " *Vernon*, 179 Ill. 2d at 346 (quoting *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985)). " 'The exception is designed to prevent a situation whereby the specific purpose of acquiring assets is to place those assets out of the reach of the predecessor's creditors. *** To allow the predecessor to escape liability by merely changing hats would amount to fraud. Thus, the underlying theory of the exception is that, if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability.' " *Vernon*, 179 Ill. 2d at 346 (quoting *Baltimore Luggage Co. v. Holtzman*, 562 A.2d 1286, 1293 (Md. Ct. Spec. App. 1989)).

¶ 59    Our supreme court has cautioned that, "[i]n determining whether one corporation is a continuation of another, the test used in the majority of jurisdictions is whether there is a

continuation of the *corporate entity of the seller*—not whether there is a continuation of the *seller's business operation* \*\*\*." (Emphases in original.) *Vernon*, 179 Ill. 2d at 346. Accordingly, " '[t]he majority of courts considering this exception emphasize a common identity of officers, directors, and stock between the selling and purchasing corporation as the key element of a "continuation." ' " *Vernon*, 179 Ill. 2d at 346-47 (quoting *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 625-26 (8th Cir. 1981)). This is true in Illinois, as well, where our courts have " 'consistently required identity of ownership before imposing successor liability under [the continuation exception].' " *Vernon*, 179 Ill 2d at 347 (quoting *Nilsson v. Continental Machine Manufacturing Co.*, 251 Ill. App. 3d 415, 418 (1993)).

¶ 60        In the case at bar, plaintiff argues that "[i]n the case at hand, the identity of ownership between [the corporation] and [the LLC] is as basic as it gets; they were owned by the same individual." However, plaintiff's argument minimizes the period between 2006 and 2011 where the holding company was the owner of the corporation. Examining the entire ownership history of the corporation establishes that there was no identity of ownership that would make the LLC merely a continuation of the corporation.

¶ 61        As set forth in Jerry's affidavit and supported by the documents attached to the affidavit, by 1999, Karl and Jerry were the sole shareholders of the corporation, with each owning a 50% share of the corporation. In September 2006, the entire corporation was sold to the holding company, with Jerry and Karl retaining no ownership interest in the corporation but continuing to work for the corporation. Prior to the sale, H.I.G. Iron Works, Inc., was the sole owner of the holding company, and neither Karl nor Jerry was ever a shareholder or otherwise held any ownership interest in H.I.G. Iron Works, Inc. Upon selling the

corporation, Jerry and Karl were each issued 125 shares of the holding company, making each a 12.5% owner of the holding company.

¶ 62     Jerry testified in his deposition that within a few months of the holding company's acquisition of the corporation, H.I.G. brought on new leadership for the corporation, including a new CFO, president, and COO, none of whom had previously worked for the corporation. The holding company was also seeking new companies to purchase, but was ultimately unsuccessful in that endeavor. By 2009, Jerry's involvement with the corporation had decreased to the point where he was no longer going to work there daily and, on December 31, 2009, Jerry resigned as an employee of the corporation.

¶ 63     According to Jerry's affidavit, he resigned from the holding company's board of directors in May 2010. On October 18, 2010, the holding company issued additional shares of stock, diluting Jerry's ownership stake in the holding company to 0.9%.

¶ 64     In 2011, the holding company began searching for a buyer for the corporation's assets and, on June 6, 2011, Jerry formed the LLC for the purpose of acquiring the corporation's assets, which occurred on June 21, 2011.

¶ 65     Examining the entire ownership history of the corporation makes clear that there was no continuity of ownership due to the significant period of time in which the holding company owned the corporation. Plaintiff correctly notes that at least one Illinois appellate court has suggested that the mere-continuation exception could apply despite the existence of an intermediary purchaser. See *Advocate Financial Group, LLC v. 5434 North Winthrop, LLC*, 2014 IL App (2d) 130998. However, as that court noted, "not only is the presence of an intermediate purchaser relevant to our inquiry, the nature of the intermediate purchaser's involvement must also be considered." *Advocate Financial Group*, 2014 IL App (2d)

130998, ¶ 29; see also *Advocate Financial Group*, 2014 IL App (2d) 130998, ¶¶ 41-42 (remanding to the trial court for findings as to whether the transfer to the intermediary was a *bona fide* transfer because if they were not, "the mere-continuation exception would apply").

¶ 66     In the case at bar, there is no evidence in the record, and plaintiff does not argue, that the purchase of the corporation by the holding company was not a *bona* fide arms-length transaction. Consequently, we cannot find that the acquisition of the assets of the corporation by a former owner after an arms-length sale to an unrelated company and several years spent under different ownership means that the LLC was merely the continuation of the original corporation.

¶ 67     Plaintiff makes much of the fact that Jerry had an ownership interest in the holding company, which it argues "effectively translated" to an ownership interest in the corporation, "given that the Holding Company's sole purpose, as formulated by the parent company, H.I.G. Capital, was to take title to the shares of" the corporation. First, plaintiff's claim as to the "sole purpose" of the holding company is misleading, as is demonstrated by looking to the actual testimony to which it cites, in which Jerry testified that "[t]heir goal was to definitely buy a few more and then sell it as a package." Jerry's testimony makes clear that the goal of H.I.G was to purchase a number of companies and sell them together. Furthermore, even at its highest, Jerry's ownership interest in the holding company was 12.5%, as opposed to the 75% ownership by H.I.G., and had been diluted by the time of the sale of the corporation's assets to a mere 0.9% interest. Jerry also had not held any position on the holding company's board of directors for over a year prior to the sale of the corporation's assets to the LLC. Thus, we cannot find Jerry's minimal ownership interest in

the holding company to translate to the type of continuity of ownership necessary for the imposition of successor liability.

¶ 68        We are similarly unpersuaded by plaintiff's arguments concerning the management of the corporation as compared to the LLC. As noted, the common identity of officers and directors is relevant in determining whether there is common ownership such that the mere-continuation exception applies. *Vernon*, 179 Ill. 2d at 346-47.  Plaintiff first argues that Jerry's management role in the corporation persisted following the sale to the holding company. While this may be true, plaintiff again fails to recognize the several years between the sale to the holding company and the sale to the LLC. Jerry testified that within a few months of the sale, H.I.G. had brought in new leadership to the corporation and he resigned from working at the corporation at the end of 2009, over a year before the holding company began searching for buyers and a year and a half before the holding company approached Jerry and he created the LLC. Thus, there was a clear break in leadership. Plaintiff also points to the fact that Sullivan, the president of the corporation, also became the president of the LLC after the asset purchase. However, the presence of one individual, whom Jerry testified was primarily responsible for sales, does not transform the LLC into the continuation of the corporation. Accordingly, we find that the trial court properly dismissed plaintiff's third-party complaint against the LLC.

¶ 69        Plaintiff also points to the fact that the LLC operates out of the same locations and referred to the corporation's activities on its website as evidence that the LLC is merely the continuation of the corporation. However, as noted, our courts have " 'consistently required identity of ownership before imposing successor liability under [the continuation

exception].' " *Vernon*, 179 Ill 2d at 347 (quoting *Nilsson*, 251 Ill. App. 3d at 418). Thus, our conclusion that there is no continuity of ownership is dispositive of the issue.

¶ 70    Furthermore, the facts pointed out by plaintiff would not change our result. Under the terms of the asset purchase agreement between the corporation and the LLC, the LLC purchased the corporation's leasehold interests as lessee of the properties it leased, as well as its website. "In determining whether one corporation is a continuation of another, the test used in the majority of jurisdictions is whether there is a continuation of the *corporate entity of the seller*—not whether there is a continuation of the *seller's business operation \*\*\**." (Emphases in original.) *Vernon*, 179 Ill. 2d at 346. The fact that the LLC chose to continue to operate out of the same facilities does not transform it into a mere continuation of the corporation. While plaintiff points to *Dearborn Maple Venture, LLC v. SCI Illinois Services, Inc.*, 2012 IL App (1st) 103513, ¶ 39, as a case where the court "specifically cited testimony" that the entities shared the same physical office and mailing address, that case involved a great deal more commonality than is present in the case at bar. Furthermore, the fact that the LLC's website showed photographs of the corporation's work (properly attributed to the corporation) and referenced quality service since 1977 means only that the LLC was continuing the corporation's business operations, not that it was assuming the corporation's corporate entity. Accordingly, we do not find plaintiff's arguments persuasive and affirm the judgment of the trial court.

¶ 71                                CONCLUSION

¶ 72    For the reasons set forth above, the trial court properly found that the LLC was not merely the continuation of the corporation such that it would be liable for the corporation's

actions and, consequently, the trial court properly dismissed plaintiff's third-party complaint against the LLC.

¶ 73        Affirmed.