15-3508-cv
Smith v. Barnesandnoble.com, LLC

# UNITED STATES COURT OF APPEALS

# FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: May 20, 2016     Decided: October 6, 2016)

Docket No. 15-3508

- - - - - - - - - - - - - - - - - -x

CHERYL SMITH,

                Plaintiff-Appellant,

      - v.-

BARNESANDNOBLE.COM, LLC,[1]

                Defendant-Appellee.

- - - - - - - - - - - - - - - - - -x


      Before:          KEARSE, WINTER, and JACOBS, Circuit Judges.

      Plaintiff Cheryl Smith appeals from the judgment of the United States District Court for the Southern District of New York (Carter, J.), dismissing her complaint, alleging direct and contributory copyright infringement, on summary judgment.  Affirmed.

---

     [1]      The Clerk of Court is directed to amend the caption as shown above.

Carlos A. Leyva, Digital Business Law Group, P.A., Largo, FL, for Appellant.

ELIZABETH ROGERS BRANNEN, Stris & Maher LLP, Los Angeles, CA (with Peter K. Stris, Brendan S. Maher, Dana Berkowitz, and Victor O'Connell on the brief), for Appellee.

DENNIS JACOBS, Circuit Judge:

Plaintiff Cheryl Smith appeals from the judgment of the United States District Court for the Southern District of New York (Carter, J.), dismissing her complaint on summary judgment. Smith alleged direct and contributory copyright infringement by defendant Barnesandnoble.com, LLC ("Barnes & Noble" or "defendant"). The defendant, under license, uploads books and book samples to digital "lockers" that the defendant maintains for its individual customers. When the license granted by Smith was terminated, the defendant did not delete a sample of Smith's book. Because the allegedly infringing conduct was authorized by the contracts at issue, we affirm the district court.

## BACKGROUND

The plaintiff is the widow of Louis K. Smith, who authored and copyrighted a book entitled The Hardscrabble Zone ("Hardscrabble"). In 2009, Mr. Smith contracted with Smashwords, Inc. ("Smashwords"), an online ebook distributor, to market his book. One relevant term of the agreement provided:

> 6d. Promotional Rights. Smashwords shall have the right to distribute samples of the Work in any form of media, including printed media, in order to promote (a) the author or author's Work and/or (b) the Smashwords service. These samples will be licensed for free, non-commercial use, duplication and sharing, and will comply with the sample percentage authorized by the Author.

2

App'x at 28.  The agreement contemplated robust rights in digital samples: it recognized that "uninhibited sampling and sharing" had the potential to "dramatically increase" an author's "total audience and sales opportunities." App'x at 30.  At the same time, the contract provided that end-users who acquired a "free work" (defined to include "sample works") had a license to "duplicate, share and reproduce" the sample, but only for "non-commercial purposes" and only "during the time the price is set at zero."  App'x at 29.  While these arrangements contemplate that a customer's right to share and duplicate a free sample could be terminated, the agreement did not provide that a customer's right to use a validly obtained sample (or the entire work) would terminate, even if the entire distribution agreement was canceled.[2]  The agreement gave notice that "Smashwords does not publish works containing digital rights management schemes that limit the customer's ability to consume Author's Work as they see fit."  App'x at 30.

In accordance with this contract (and with Mr. Smith's permission), Smashwords provided Hardscrabble for sale and sampling to its retail partners, including Barnes & Noble, which listed the book for sale on bn.com and made free samples available.

Apparently disappointed with the sales figures (none were sold), Mr. Smith terminated his agreement with Smashwords in October 2011.  Despite the termination, the book erroneously remained listed by Barnes & Noble on bn.com.  The book was de-listed on April 20, 2012, and the dispositive issue is whether any customers acquired a sample while it was listed without a distribution agreement in place.  Prior to termination of the agreement, a single customer of Barnes & Noble acquired a digital sample of Mr. Smith's book.  No other customer bought a copy or obtained a sample, before or after the distribution agreement was cancelled.

---

[2]     The provision governing termination stated, "Either party may terminate this agreement this Agreement [sic] at any time without notice.  Registered Smashwords members may cancel their membership at any time, and published Smashwords authors may remove their author and book listings at any time."  App'x at 30.

The sample was stored through Barnes & Noble's digital locker system. When a Barnes & Noble customer downloads a free sample (or purchases an ebook) the content is stored through a digital locker associated with the customer's account. The system, effectively the user's bookshelf for digital products, is cloud-based. Cloud computing uses remote servers and networks for data storage which may be accessed using web-enabled devices, such as computers, tablets, or smart phones.

There is no dispute that the single customer's initial access to the sample was authorized under the contract and occurred before the agreement was terminated. After Mr. Smith cancelled the agreement with Smashwords, that same customer twice accessed the sample in his or her cloud-based account. Those two instances of access form the basis of the plaintiff's claim that Barnes & Noble infringed the copyright. There is no record evidence that any other customer accessed a sample after the agreement was cancelled; and there is no record evidence that any person ever purchased the entire work from Barnes & Noble. The plaintiff's theory of liability is that Barnes & Noble was no longer permitted to provide its customers with access to the sample after the agreement was terminated.

**DISCUSSION**

**I**

We review a grant of summary judgment de novo. Authors Guild, Inc. v. HathiTrust, 755 F.3d 87, 93-94 (2d Cir. 2014). The moving party bears the burden to demonstrate the absence of any genuine issues of material fact; and we "view the evidence in the light most favorable to the party opposing summary judgment, [] draw all reasonable inferences in favor of that party, and [] eschew credibility assessments." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 122 (2d Cir. 2004) (internal quotation marks omitted).

The district court granted summary judgment on the basis that the conduct at issue did not amount to direct or contributory infringement under Cartoon Network LP, LLLP v. CSC Holdings, Inc., 536 F.3d 121, 131-33 (2d Cir. 2008), and

the Sony-Betamax rule, see Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 442 (1984).  We decline to decide the infringement issue in the novel context of cloud storage, particularly given the sparse facts of the case.  Instead we affirm on an alternative ground.  See Name.Space, Inc. v. Network Solutions, Inc., 202 F.3d 573, 584 (2d Cir. 2000); Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63 (2d Cir. 1997) ("It is beyond cavil that an appellate court may affirm the judgment of the district court on any ground appearing in the record.").

We conclude that the conduct at issue was authorized by the relevant contracts between the parties.  See Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 66 (2d Cir. 2000) ("Under New York law, the meaning of a contract that is unambiguous is a question of law for the court to decide.").

## II

A claim of direct copyright infringement requires proof that (1) the plaintiff had a valid copyright in the work, and (2) the defendant infringed the copyright by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder.  Island Software & Computer Serv., Inc. v. Microsoft Corp., 413 F.3d 257, 260 (2d Cir. 2005).  There is no dispute in this case that the plaintiff has a valid copyright, but the plaintiff must also be able to demonstrate that the copying was unauthorized.  See Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 139 (2d Cir. 1992).  Where, as here, the existence of the license is undisputed, and the only contested issue is its scope, the copyright owner bears the burden of proving that the defendant's conduct was unauthorized under the license.  See Graham v. James, 144 F.3d 229, 236 (2d Cir. 1998); Bourne v. Walt Disney Co., 68 F.3d 621, 631 (2d Cir. 1995).

The plaintiff had a distribution agreement that explicitly permitted the distribution of samples as promotional material.  The plaintiff concedes that digital sampling as a method of distribution was permitted under the distribution agreement's phrase "any form of media."  See App'x at 28.

After the agreement was canceled, the one customer who had already validly obtained a sample was permitted to access the sample in the customer's

cloud-based account two more times; the plaintiff contends that these two instances of access amount to copyright infringement. However, the agreement provides for the distribution of samples with a license "for free, noncommercial use, duplication and sharing," App'x at 28, without provision to terminate the license for samples already distributed in the event the distribution agreement itself is terminated. Significantly, the distribution agreement authorizes paper samples as well as digital samples, and treats them alike. Since a customer who has a paper sample may obviously keep it, reread it, and make additional paper copies of it for noncommercial use at will, it follows that the agreement does not provide or imply that a person who obtained a digital sample would lose the license for free access upon termination of the distribution agreement. Cf. Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co., 145 F.3d 481, 486 (2d Cir. 1998) (explaining that licensees "may properly pursue any uses which may reasonably be said to fall within the medium as described in the license." (quoting Bartsch v. Metro-Goldwyn-Mayer, Inc., 391 F.2d 150, 155 (2d Cir. 1968) (Friendly, J.)). To the contrary, the agreement contemplated robust sampling rights, and Smashwords prohibited authors from using digital rights management schemes that would limit a customer's ability to consume the author's work "as they see fit." See App'x at 30. The plaintiff does not argue that a customer who purchased the book itself would lose cloud-based access to it upon termination of a distribution agreement; the license to access the (free) sample is no more restrictive or limited than the license to access the book itself after purchase.[3] Once the customer acquired the cloud-based sample, the service that Barnes & Noble provided was no longer distribution; the service provided

---

[3] In the agreement between Barnes & Noble and Smashwords, it was made clear that Barnes & Noble was permitted "to allow its customers from time to time to upload and download eBooks that were purchased by such customers from such eBook Store *even if the eBook is no longer for sale*." App'x at 35 (emphasis added). As discussed above, there is no indication that Smashwords intended a more restrictive license for free samples distributed under its agreements with authors.

was access.[4]  The cloud-based digital locker system permitted the customers to put ebooks or samples into their accounts, which books and samples they could then download to their devices whenever and wherever they wanted.

Because the agreement does not provide for the license in the sample to terminate after the sample has been distributed, the plaintiff cannot sustain her burden to prove that providing cloud-based access to validly obtained samples is beyond the scope of the license agreement.  Accordingly, the district court was correct to grant defendants' motion for summary judgment, and we affirm the judgment, albeit on different grounds.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court. We have considered all of appellant's other arguments and find them to be meritless.

---

[4]  We express no opinion whether it would be copyright infringement if a customer had obtained a sample from Barnes & Noble for the first time after Mr. Smith cancelled the distribution agreement.