17-3198(L)
State of New York v. Mountain Tobacco Company

# United States Court of Appeals
# for the Second Circuit

AUGUST TERM 2018
Nos. 17-3198(L), 17-3222(XAP)

STATE OF NEW YORK,
Plaintiff-Appellee-Cross-Appellant,

v.

MOUNTAIN TOBACCO COMPANY, DBA KING MOUNTAIN TOBACCO COMPANY INC.,
Defendant-Appellant-Cross-Appellee,

MOUNTAIN TOBACCO DISTRIBUTING COMPANY INC., DELBERT WHEELER, SR.,
Defendants.

ARGUED: JANUARY 24, 2019
DECIDED: NOVEMBER 7, 2019

Before:      KEARSE, JACOBS, SACK, Circuit Judges.

Mountain Tobacco Company ("King Mountain") appeals from a judgment

of the United States District Court for the Eastern District of New York granting

partial summary judgment for the State of New York on its claims that King

Mountain violated state laws on cigarette sales, and enjoining future violations.

1

King Mountain argues on appeal that the State's enforcement practices violate the dormant Commerce Clause; that one state claim is barred by res judicata and in any event fails on the merits; and that the State's regulation of commerce between Indian nations violates federal Indian protections.

The State cross-appeals from the district court's dismissal on summary judgment of its claims under two federal statutes, the Contraband Cigarette Trafficking Act ("CCTA") and the Prevent All Cigarette Trafficking Act ("PACT" Act). The State argues that King Mountain's cigarette deliveries constitute "interstate commerce" actionable under the PACT Act, and that King Mountain does not enjoy the CCTA's exemption for "an Indian in Indian country."

Affirmed in part, reversed in part, and remanded.

————————————

NELSON BOXER, Petrillo Klein & Boxer LLP, New York, NY (Philip Pilmar, Petrillo Klein & Boxer LLP, New York, NY; Randolph H. Barnhouse, Barnhouse Keegan Solimon & West LLP, Los Ranchos de Albuquerque, NM, on the brief), for Defendant-Appellant-Cross-Appellee Mountain Tobacco Company.

JUDITH VALE (Andrew D. Bing, Steven C. Wu, Eric Del Pozo, on the brief), for Letitia James, Attorney General for the State of New York, New York, NY, for

2

Plaintiff-Appellee-Cross-Appellant State of New York.

COURTNEY DIXON (Hashim M. Mooppan, Mark B. Stern, William E. Havemann, Charles R. Gross, Jeffrey A. Cohen, on the brief), United States Department of Justice, Washington, DC, for Amicus Curiae United States of America in support of New York State.

JOHN M. PEEBLES (Steven J. Bloxham, Tim Hennessy, Peter D. Lepsch, on the brief), Fredericks Peebles & Morgan LLP, Sacramento, CA, for Amicus Curiae National Congress of American Indians in support of King Mountain Tobacco Company Inc. (on submission).

DENNIS JACOBS, Circuit Judge:

Mountain Tobacco Company ("King Mountain") ships unstamped (and therefore untaxed) cigarettes from the Yakama Indian Reservation in Washington State to certain Indian reservations in the State of New York. The State, which thereby loses tax revenue, brought this action to enjoin King Mountain from making such shipments, which it claims violate state and federal law, and to obtain additional relief including civil penalties and damages.

King Mountain appeals from a judgment of the United States District Court for the Eastern District of New York (Seybert, J.) granting partial summary judgment for the State of New York on its claims that King Mountain violated state laws on cigarette sales, and enjoining future violations. The district court

3

ruled in relevant part that King Mountain violated state law by selling unstamped cigarettes to Indian nations or reservation cigarette sellers, that the relevant state claim was not barred by res judicata, and that the injunction withstands the dormant Commerce Clause. On appeal, King Mountain argues that the State's enforcement practices violate the dormant Commerce Clause; that one state claim is barred by res judicata and in any event fails on the merits; and that the injunction amounts to state regulation of commerce between Indian nations in violation of federal Indian protections.

The State cross-appeals from the district court's dismissal on summary judgment of its claims under two federal statutes, the Prevent All Cigarette Trafficking Act ("PACT" Act) and the Contraband Cigarette Trafficking Act ("CCTA"). The district court ruled that King Mountain's cigarette shipments were not "interstate commerce" actionable under the PACT Act, and that King Mountain is an "Indian in Indian country" that is exempt from CCTA liability. On appeal, the State argues that King Mountain's cigarette shipments were "interstate commerce" as defined by the PACT Act, and that King Mountain does not enjoy the CCTA's exemption for "an Indian in Indian country."

For the reasons set out below, the judgment of the district court is affirmed

4

in part and reversed in part, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

The New York State Department of Taxation and Finance ("DTF") uses a "stamping" system to precollect certain state and local cigarette taxes. New York law requires that all cigarettes "possessed" for sale in the state bear a stamp evidencing payment of the applicable taxes, and that all cigarettes delivered into the state be sent initially to state-licensed stamping agents. See N.Y. Tax L. ("NYTL") § 471. Stamping agents purchase tax stamps, affix them to cigarette packages, and pass on the taxes to consumers by incorporating the stamps' value into cigarette resale prices. See id.

King Mountain, a manufacturer and seller of cigarettes, is organized under the laws of the Yakama Nation, with its principal place of business on the Yakama reservation, which is situated within the boundaries of Washington State. In November 2012, May 2013, and June 2013, state investigators purchased unstamped cartons of King Mountain cigarettes from smoke shops on the Poospatuck Indian Reservation in Mastic, New York. Also in May 2013, a state investigator purchased a carton of unstamped King Mountain cigarettes from a

5

smoke shop on the Cayuga Nation reservation in Union Springs, New York. In December 2012, state troopers seized 140 cases of unstamped King Mountain cigarettes from a truck in Clinton County, New York, which was en route to the Ganienkeh Nation in Altona, New York.

The State's Amended Complaint, filed in May 2014, alleges that King Mountain unlawfully delivered millions of unstamped cigarettes into New York since 2010, and asserts claims under various provisions of the NYTL and New York Executive Law ("NYEL") (dealing with tax collection, public health, and fire safety), as well as the CCTA and the PACT Act. King Mountain, which denies the State's allegations, does not contest that it sells its cigarettes to Indian nations and to companies owned by tribe members and situated on Indian reservations, some of which are within the borders of the State of New York.

In January 2016, King Mountain and the State cross-moved for summary judgment. The district court granted summary judgment for King Mountain on the CCTA and PACT Act claims (except as to the PACT Act claim premised on a sale to Valvo Candies, which is not Indian-owned or on a reservation). As for the State's claim under NYTL § 471, the district court granted summary judgment for King Mountain with respect to its alleged possession of unstamped cigarettes,

6

and granted summary judgment for the State with respect to King Mountain's failure to sell its unstamped cigarettes to licensed stamping agents. Finally, the court granted summary judgment for the State with respect to its NYTL claim relating to public health certifications, and granted in part and denied in part summary judgment for the State on its NYEL claim relating to fire safety certifications.

In November 2016, the State informed the district court that it was declining to prosecute the portions of its PACT Act and NYEL claims for which summary judgment was denied, meaning that no claims remained to be tried.

The State declined to seek penalties or costs for the claims on which it prevailed, and instead filed a motion for injunctive relief seeking to enjoin King Mountain from: (1) "Selling unstamped cigarettes directly to Indian nations or tribes and/or reservation cigarette sellers or entities that are not licensed stamping agents, in violation of [NYTL] Section 471"; (2) "Continuing to sell cigarettes into the State of New York, without first complying with [NYTL] Section 480-b's [public health] certification requirements"; and (3) "Continuing to sell or offer cigarettes for sale, without first complying with [NYEL] Section 156-c's [fire safety] certification requirements." State of New York v. Mountain Tobacco Co.,

7

No. 12-CV-6276(JS)(SIL), 2017 WL 6419148, at *2 (E.D.N.Y. Aug. 29, 2017) (brackets omitted).   The State also unsuccessfully sought authority to seize any unstamped King Mountain cigarettes found in New York that are being delivered to unauthorized persons or are in their possession.   But the court otherwise granted the requested relief, and entered final judgment on September 5, 2017.

King Mountain's appeal argues that: (1) the relevant New York statutes violate the dormant Commerce Clause; (2) the claim under NYTL § 471 is barred by res judicata; (3) the NYTL § 471 claim in any event fails on the merits; and (4) the State's regulation of commerce between Indian nations violates federal Indian protections.

The State's cross-appeal argues that: (1) King Mountain's cigarette deliveries constituted "interstate commerce" actionable under the PACT Act; and (2) King Mountain does not enjoy the CCTA's exemption for "an Indian in Indian country."

## I

"We review a grant of summary judgment de novo."   Smith v. Barnesandnoble.com, LLC, 839 F.3d 163, 166 (2d Cir. 2016).   "The moving party bears the burden to demonstrate the absence of any genuine issues of material

8

fact; and we view the evidence in the light most favorable to the party opposing summary judgment, draw all reasonable inferences in favor of that party, and eschew credibility assessments."  Id. (internal quotation marks and brackets omitted).

"We review the issuance of a permanent injunction for abuse of discretion, which may be found where the Court, in issuing the injunction, relied on clearly erroneous findings of fact or an error of law."  16 Casa Duse, LLC v. Merkin, 791 F.3d 247, 254 (2d Cir. 2015) (internal quotation marks omitted).

**II**

1.    Dormant Commerce Clause.   We have explained the so-called "dormant Commerce Clause" thus:

> In implementing the Commerce Clause, the Supreme Court "has adhered strictly to the principle 'that the right to engage in interstate commerce is not the gift of a state, and that a state cannot regulate or restrain it."  Hughes [v. Alexandria Scrap Corp., 426 U.S. 794, 808 (1976)].   It flows from this principle that "[t]he negative or dormant implication of the Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby impedes free private trade in the national marketplace."  Gen. Motors Corp. [v. Tracy, 519 U.S. 278, 287 (1997)] (internal quotation marks, brackets and citations omitted).

Selevan v. N.Y. Thruway Auth., 584 F.3d 82 (2d Cir. 2009); see also Department of

9

Revenue of Ky. V. Davis, 553 U.S. 328, 336 (2008) (describing the history of this interpretation of the Commerce Clause).

King Mountain argues that the State violated the dormant Commerce Clause by enforcing its tax laws only against non-New York Indian cigarette manufacturers, thus unconstitutionally discriminating against out-of-state Indian cigarette manufacturers. According to King Mountain: there are many Indian tribes and companies owned by tribe members that manufacture cigarettes within the boundaries of New York and that fail to sell those cigarettes to licensed stamping agents; the State is aware of them, yet has not enforced its tax and cigarette laws against those in-state manufacturers--and has formally exempted the Oneida Nation from compliance with certain state laws regarding the manufacture and sale of unstamped cigarettes. As King Mountain emphasizes, the State has brought this action against King Mountain (located within Washington State), and has brought a federal action against a First Nations manufacturer located in Canada.

A state law or regulation offends the dormant Commerce Clause only if it "(1) clearly discriminates against interstate commerce in favor of intrastate commerce, (2) imposes a burden on interstate commerce incommensurate with

the local benefits secured, or (3) has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question." Selevan, 584 F.3d at 90 (internal quotation marks omitted). On appeal, King Mountain argues only (1), discrimination against interstate commerce.

As the district court observed, King Mountain does not contend that New York's tax statutes are discriminatory on their face. There is no decision of this Court standing for the proposition that discriminatory enforcement of a nondiscriminatory state law violates the dormant Commerce Clause. But we need not decide that question now. The lack of universal enforcement does not bespeak discrimination; and there is no plausible reason New York would encourage or protect a local industry engaged in selling untaxed cigarettes.

King Mountain relies on decisions in two other circuits, which, as the district court concluded, fail to support King Mountain's position. The First Circuit's decision in Walgreen Co. v. Rullan, 405 F.3d 50 (1st Cir. 2005), discussed the manner in which the statute at issue had been enforced; but the court's holding was that the statute itself--not merely its enforcement--violated the dormant Commerce Clause. See id. at 59. As for Florida Transp. Servs., Inc. v. Miami-Dade Cty., 703 F.3d 1230 (11th Cir. 2012), the Eleventh Circuit based a

dormant Commerce Clause violation on the official enforcement of the ordinance at issue without, however, determining whether the enforcement practices constituted direct discrimination in violation of the dormant Commerce Clause. Id. at 1257. The holding was that regardless of discrimination, the ordinance violated the dormant Commerce Clause because it placed a burden on interstate commerce that clearly exceeded its local benefits. Id.

Accordingly, King Mountain has failed to establish a violation of the dormant Commerce Clause.[1]

2.      Res Judicata.   King Mountain argues that the State's claim under NYTL § 471 is barred by res judicata by virtue of prior state administrative proceedings.

In December 2012, DTF issued a Notice of Determination that King Mountain was liable for $1,259,250 in unpaid state taxes in connection with unstamped King Mountain cigarettes discovered by state police in December

---

[1] King Mountain cursorily argues that the district court abused its discretion in entering a permanent injunction, on the ground that the balance of hardships and public interest favor denial of an injunction as a result of the State's violation of the dormant Commerce Clause.   Because King Mountain has failed to demonstrate a violation of the dormant Commerce Clause, it has failed to identify any error of law or abuse of discretion in the district court's entry of the injunction.   See TVEyes, 883 F.3d at 181.

2012.   King Mountain challenged the tax assessment, but prior to the hearing in the New York State Division of Tax Appeals, the parties agreed to a Stipulation of Discontinuance stating that King Mountain did not owe any taxes, penalties, or interest in connection with the Notice of Determination.   The Administrative Law Judge accordingly cancelled the tax assessment and dismissed the administrative proceeding with prejudice.   King Mountain argues that the State's third claim for relief seeks to recover the same taxes for the same conduct under the same statute at issue in the administrative proceeding, and is therefore barred by res judicata.

"Under the doctrine of res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."   Jacobson v. Fireman's Fund Ins. Co., 111 F.3d 261, 265 (2d Cir. 1997) (internal quotation marks omitted).   "A federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Id. (internal quotation marks and alterations omitted).   "New York's transactional approach to res judicata" bars "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on

13

different legal theories or seeks dissimilar or additional relief." Id. (internal quotation marks omitted).

The district court determined that the Stipulation of Discontinuance constituted a final adjudication on the merits of DTF's administrative claim; that DTF and the New York Attorney General are in privity with one another; and that the State's claim under NYTL § 471 in this case, to the extent that it relates to unstamped cigarettes discovered in December 2012, could have been raised in the administrative proceeding. Nevertheless, the district court ruled that a state investigator's purchase of unstamped King Mountain cigarettes in November 2012 "arises out of a different underlying factual transaction than the December 3rd Inspection--namely, the purchase of unstamped cigarettes at a smoke shop on the Poospatuck Reservation in Suffolk County rather than the search and seizure of a truck of unstamped cigarettes in Clinton County." State of New York v. Mountain Tobacco Co., No. 12-CV-6276(JS)(SIL), 2016 WL 3962992, at *15 (E.D.N.Y. July 21, 2016). The court therefore concluded that the State's claim under NYTL § 471 is barred by res judicata insofar as it relates to the December 2012 discovery of unstamped King Mountain cigarettes but is not barred insofar as it is based on the November 2012 purchase.

14

King Mountain argues that the November 2012 purchase arises out of the same "series of transactions" as the December 2012 seizure, and that by the time of the administrative proceeding, the State had all of the facts necessary to seek relief against King Mountain under NYTL § 471 with respect to the November 2012 purchase. Therefore, because res judicata applies to all claims that could have been raised in the prior action, King Mountain argues that all violations of NYTL § 471 prior to the December 2012 Notice of Determination are precluded.

However, under New York law, the Division of Tax Appeals is empowered only to determine the liability of a taxpayer who has received a Notice of Determination. NYTL § 478. After a taxpayer files a petition challenging a Notice of Determination (as King Mountain did), DTF may move to dismiss the petition on a number of grounds, see NYTL § 2006(5), but King Mountain offers no support for the proposition that DTF could have raised tax claims that were not the subject of the Notice of Determination. Accordingly, because King Mountain has failed to establish that DTF could have raised claims related to the November 2012 purchase of unstamped King Mountain cigarettes in the administrative proceeding, we see no error in the district court's determination that the State's third claim for relief is not barred by res judicata to the extent that

15

it is based on that purchase.   See Jacobson, 111 F.3d at 265.

3.      Violation of NYTL § 471.   The district court ruled that because a common carrier was used to transport the cigarettes to Indian reservations and Indian-owned businesses in New York, King Mountain did not "possess" unstamped cigarettes in the State of New York and therefore did not violate NYTL § 471.   The district court nevertheless granted summary judgment for the State on its third claim on the ground that King Mountain violated the statute by admittedly failing to sell its cigarettes directly to a licensed stamping agent. King Mountain argues that the statutory requirement to sell cigarettes to licensed stamping agents applies only to "wholesalers," not manufacturers such as King Mountain, which is a "wholesale dealer."

Even if we accept, arguendo, that a distinction between a "wholesaler" and a "wholesale dealer" is decisive under the applicable statutes, King Mountain's admissions establish that it violated the implementing regulations of NYTL § 471. As the district court observed, King Mountain has conceded that it is a wholesale dealer under § 471, that it is not a licensed stamping agent, and that it sold unstamped cigarettes directly to Indian tribes and companies owned by tribe members.   Such conduct clearly violates the implementing regulations of § 471,

16

which require that "[a]ll cigarettes sold by agents and wholesale dealers to Indian nations or tribes or reservation cigarette sellers located on Indian reservations must bear a tax stamp."   20 N.Y.C.R.R. 74.6(a)(3).   On that ground, the district court correctly granted summary judgment for the State on its third claim for relief.[2]

4.    Federal Indian Protections.   King Mountain argues for the first time on appeal that the relevant New York statutes violate the Indian Commerce Clause and the Yakama Treaty of 1859, and are thus preempted by federal law.

The Indian Commerce Clause grants the United States Congress the power "to regulate commerce . . . with the Indian tribes."   U.S. Const. art. I, § 8, cl. 3. King Mountain contends that this power belongs exclusively to Congress, and that the district court's ruling impermissibly allows New York to burden Indian-nation-to-Indian-nation trade.

"[T]he Supreme Court has determined that to enforce valid state taxation of on-reservation cigarette sales, states may impose 'on reservation retailers minimal

---

[2] While the district court's analysis focused on NYTL § 471 itself, "[w]e may, of course, affirm on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely."   Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007).

17

burdens reasonably tailored to the collection of valid taxes from non-Indians.'"

Oneida Nation of New York v. Cuomo, 645 F.3d 154, 166 (2d Cir. 2011) (quoting

Dep't of Taxation & Fin. of New York v. Milhelm Attea & Bros., 512 U.S. 61, 73

(1994)). "As a result, a party challenging a state cigarette tax must establish that

a state's collection mechanism is unduly burdensome and not reasonably tailored

to collection of the taxes." Id.

Oneida Nation determined that under NYTL § 471 "the legal incidence of

New York's tax falls on non-Indian consumers. Accordingly, whatever its

economic impact, the tax is not categorically barred" by the Indian Commerce

Clause. Id. at 168. Oneida Nation additionally concluded that New York's

stamping regime does not place an undue burden on tribal retailers: "the New

York Legislature has reasonably determined that collection of the cigarette excise

tax through efforts directed at individual buyers is impractical, and that, if it is to

be collected at all, the tax must be precollected when cigarettes enter the stream of

commerce." Id. at 169. The reasoning of Oneida Nation is applicable to Indian

wholesale dealers such as King Mountain. There is no violation of the Indian

Commerce Clause here.

King Mountain additionally argues that the treaty between the United

18

States and the Yakama Nation prohibits states from placing regulatory

preconditions (such as tax stamping requirements) on the right to engage in the

transport of tobacco products.   That argument is likewise meritless.   True, the

Yakama Nation Treaty of 1855 preserves the Yakama people's right to travel all

public highways; but that right is not at issue in this case because (as the district

court observed) King Mountain did not transport cigarettes within New York, but

instead utilized a common carrier.   To the extent that King Mountain's argument

relates to trade, i.e., its ability to sell cigarettes to Indian nations in New York,

"there is no right to trade in the Yakama Treaty."   See King Mountain Tobacco

Co. v. McKenna, 768 F.3d 989, 998 (9th Cir. 2014).[3]

### III

1.    PACT Act.   The PACT Act, in relevant part, requires certain filings

to be made by "[a]ny person who sells, transfers, or ships for profit cigarettes or

smokeless tobacco in interstate commerce, whereby such cigarettes or smokeless

tobacco are shipped into a State, locality, or Indian country of an Indian tribe

---

[3] King Mountain separately argues that federal law preempts the relevant New York statutes.   However, it fails to cite any federal statutes capable of preemption in this context.   Cf. Coal. for Competitive Elec., Dynergy Inc. v. Zibelman, 906 F.3d 41, 49 (2d Cir. 2018).

taxing the sale or use of cigarettes or smokeless tobacco." 15 U.S.C. § 376(a). The district court ruled that the transactions at issue did not take place in interstate commerce.

The statute defines "interstate commerce" as: (1) "commerce between a State and any place outside the State"; (2) "commerce between a State and any Indian country in the State"; or (3) "commerce between points in the same State but through any place outside the State or through any Indian country." 15 U.S.C. § 375(9)(A). Further, "[a] sale, shipment, or transfer of cigarettes or smokeless tobacco that is made in interstate commerce, as defined in this paragraph, shall be deemed to have been made into the State, place, or locality in which such cigarettes or smokeless tobacco are delivered." 15 U.S.C. § 375(9)(B).

The district court determined that all the relevant King Mountain cigarette sales were made from King Mountain's location on the Yakama reservation to Indian reservations within the boundaries of New York. It observed that the PACT Act defines "State" and "Indian country" separately, and concluded that "[t]he notion that a qualified Indian reservation-–which falls squarely within the definition of 'Indian Country'—is somehow subsumed within the definition of 'state' is belied by a plain reading of the statute." Mountain Tobacco Co., 2016

20

WL 3962992, at *8. Accordingly, because the district court determined that "State" and "Indian country" must be treated as mutually exclusive geographic entities under the PACT Act, it ruled that King Mountain's sales from one Indian reservation to other Indian reservations did not originate or conclude in a "State," and therefore did not fall within the statutory definition of "interstate commerce."

The State argues that the district court erred by ruling that the PACT Act's definition of "interstate commerce" excludes sales that begin and end on Indian reservations located within the borders of different states. We agree.

"Every exercise in statutory construction must begin with the words of the text." Saks v. Franklin Covey Co., 316 F.3d 337, 345 (2d Cir. 2003). If the statutory terms are unambiguous, we construe the statute according to the plain meaning of its words. See, e.g., Rubin v. United States, 449 U.S. 424, 430 (1981); Greenery Rehab. Grp., Inc. v. Hammon, 150 F.3d 226, 231 (2d Cir. 1998). The plain meaning is best discerned by "looking to the statutory scheme as a whole and placing the particular provision within the context of that statute." Saks, 316 F.3d at 345.

The district court's view that the terms "Indian country" and "State" in the PACT Act are mutually exclusive is inconsistent with the statute's definition of

21

"State" as "each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States." 15 U.S.C. § 375(11). As a general rule, this definition includes Indian reservations within the States. See Nevada v. Hicks, 533 U.S. 353, 361-62 (2001) ("Indian reservation[s] [are] considered part of the territory of the State" in which they are located.). Congress undoubtedly can modify that general rule, but we conclude for the following reasons that it has not done so in the context of the PACT Act.

First, the use of different terms to reference two geographic entities does not render the terms mutually exclusive.[4] Here, plain meaning and statutory context imply that one is naturally inclusive of the other. See Saks, 316 F.3d at 345.

Second, the wording of the PACT Act appears to recognize that "Indian country" and "State" are not mutually exclusive. For example, the statute's

---

[4] For example, the statute's reporting requirement applies to cigarettes "shipped into a State, *locality*, or Indian country." 15 U.S.C. § 376(a) (emphasis added). It would be odd to say that a "locality" is not located within a "State" simply because the terms are used separately, or because the PACT Act's definition of "State" does not explicitly refer to localities.

second definition of interstate commerce encompasses "commerce between a State and any Indian country *in the State*," 15 U.S.C. § 375(9)(A) (emphasis added).[5]  Moreover, the PACT Act's third definition of interstate commerce includes "commerce between points in the same State but through any place outside the State *or* through any Indian country."  15 U.S.C. § 375(9)(A) (emphasis added).  Use of the disjunctive "or" indicates that "Indian country," like a "locality," is not "outside the State."  If "Indian country" and "State" were mutually exclusive geographic entities, then "commerce between points in the same state but through any place outside the State" would suffice, and the remainder of the sentence--"or through any Indian country"--would be surplusage.

Our interpretation of the PACT Act conforms to the principle that "a statute

---

[5] The reporting requirements include invoices filed with both the State and the "chief law enforcement officers of the local governments and Indian tribes operating *within the borders of the State*" to which the cigarettes are shipped.  See 15 U.S.C. § 376(a)(3) (emphasis added).  Additionally, "Indian country" is defined to include "all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state," see 18 U.S.C. § 375(7)(A) (incorporating by reference 18 U.S.C. § 1151), "except that *within* the State of Alaska that term applies only to the Metlakatla Indian Community [on the] Annette Island Reserve," id. (emphasis added).

23

should be interpreted in a way that avoids absurd results." United States v. Dauray, 215 F.3d 257, 264 (2d Cir. 2000) (citing United States v. Hendrickson, 26 F.3d 321, 336 (2d Cir. 1994)). The State's brief identifies an anomaly created by the district court's ruling, i.e. (in the State's words), "a transaction touching just one State and one Indian reservation would be reportable 'interstate commerce,' whereas a delivery traversing more than ten States and two Indian reservations--as King Mountain's shipments did--would not be." State Br. at 66. Had King Mountain shipped their cigarettes from the Yakama reservation in Washington State to nearby Seattle, there would be no dispute that the shipment would be covered by the statute because it constitutes "commerce between a State and any Indian country in the State." King Mountain shipped its cigarettes nearly coast-to-coast. King Mountain provides no explanation why Congress would, or did, exclude such shipments from the statute's definition of "interstate commerce" when they are clearly "interstate" under a commonsense understanding of that word.

In sum, we agree with the State that Congress's decision to separately define "Indian country" and "State" in the PACT Act evidences Congressional intent to expand the traditional understanding of "interstate commerce" rather

24

than narrow it.  The definition "commerce between a State and any place outside the State," 15 U.S.C. § 375(9)(A), sweeps broadly to encompass all commerce except that which is purely intrastate.  That definition therefore encompasses King Mountain's sales from the Yakama reservation in Washington State to Indian reservations in New York.

Accordingly, the district court's grant of summary judgment for King Mountain on the PACT Act claim is reversed, and because King Mountain does not contest that it failed to make the filings required by the PACT Act, we reverse the district court's denial of summary judgment for the State on the PACT Act claim.

2.  CCTA.  The CCTA provides that it is "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco," 18 U.S.C. § 2342(a), and defines "contraband cigarettes" as 10,000 or more cigarettes that "bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where the cigarettes are found, if the State or local government requires a stamp," 18 U.S.C. § 2341(2) .  The CCTA includes an exemption providing that "[n]o civil action may be commenced . . . against an Indian Tribe or an Indian in

Indian country." 18 U.S.C. § 2346(b)(1). The statute does not define "Indian"; "Indian country" is defined in relevant part as "all land within the limits of any Indian reservation under the jurisdiction of the United States." 18 U.S.C. § 1151(a).

The district court held that King Mountain, which is organized under the laws of the Yakama Nation, wholly owned by a member of the Yakama Nation, and located on the Yakama reservation, qualifies as an "Indian in Indian Country," and therefore is exempt from the CCTA. We agree.

The question is whether the exemption for "Indian[s] in Indian country" benefits only individuals who are enrolled tribe members, not business entities. The State claims that the CCTA imported the phrase "Indian in Indian country" from the Indian Major Crimes Act, 18 U.S.C. § 1153(a), which the Supreme Court has described as providing federal courts with "exclusive jurisdiction to try *individuals* for offenses covered by" the statute. Negonsott v. Samuels, 507 U.S. 99, 105 (1993) (emphasis added). The State points to other federal statutes that define "an Indian" as a member of an Indian tribe, and that separately define "Indian" and "Indian-owned business."

This question is a close one, with valid and plausible points made on both

26

sides. But since it must be decided, we conclude that the district court correctly interpreted "Indian in Indian country" to include King Mountain, an entity wholly owned by a member of the Yakama Nation, located on the Yakama reservation, and organized under the laws of that nation. The CCTA allows a State to sue in federal court to prevent and restrain violations of the chapter "by any person," but excludes from that authorization such "civil action[s] . . . against . . . an Indian." 18 U.S.C. § 2346(b)(1). The CCTA does not define "Indian"; but neither does it define "person," which under the Dictionary Act includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals." 1 U.S.C. § 1. We decline to interpret § 2346(b)(1) to mean that an "Indian" is not a "person," with all that that entails. Viewing "the statutory scheme as a whole and placing the particular provision within the context of that statute," Saks, 316 F.3d at 345, we conclude on balance that the CCTA's exemption for an "Indian in Indian country" applies to King Mountain.

This interpretation is supported by recent analysis of the Supreme Court:

> [T]he purpose of [the corporate personhood] fiction is to provide protection for human beings. A corporation is simply a form of organization used by human beings to achieve desired ends. . . .

27

When rights, whether constitutional or statutory, are extended to corporations, the purpose is to protect the rights of these people.

Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682, 706–07 (2014). Accordingly (the Court observed) "extending Fourth Amendment protection to corporations protects the privacy interests of employees and others associated with the company." Id. at 707. By the same token, extending CCTA immunity to Indian-owned corporations located on Indian reservations and organized under tribal law protects the immunity of individual Indians. "[S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985). The State's arguments to the contrary fall short:

- The State claims that numerous federal statutes define "Indian" to mean only individual Tribe members, and argues that such usage establishes that the plain meaning of the term in the CCTA excludes corporations. King Mountain, for its part, offers only one statute, 18 U.S.C. § 1153, that (it argues) uses the term "Indian" in a manner that includes corporations. Cf. United States v. Doe, 572 F.3d 1162, 1167-68 (10th Cir. 2009) (concluding that "other person" in the statutory phrase "Any Indian who commits against the person or

28

property of another Indian or other person any of the following offenses" includes corporations). However, the statutes cited by the State fail to establish a common meaning of the term "Indian" that could control our interpretation of the term in the context of the CCTA. While a number of the statutes[6] define the term "Indian" to refer to an "individual," an equal number[7] define "Indian" as a "person" that is a member of an Indian tribe. The term "person," again, includes companies and corporations under the Dictionary Act.

- The term "Indian-owned business" is used in other statutes; but that fails to demonstrate that the term "Indian" excludes such businesses in the CCTA context. On the contrary, Congress's choice not to separately define "Indian-owned business" in the CCTA would suggest that it did not intend to distinguish such businesses from individual Indians: when it wishes to make such a distinction, it knows how to do so. Cf. Dole Food Co. v. Patrickson, 538 U.S. 468, 476 (2003).

---

[6] 18 U.S.C. § 1159(c)(1); 20 U.S.C. § 1401(12); 20 U.S.C. § 7491(3); 25 U.S.C. § 305e(a)(1); 25 U.S.C. § 2101(1); 25 U.S.C. § 3703(8); 29 U.S.C. § 705(19); 43 U.S.C. § 2401(3).

[7] 16 U.S.C. § 1722(5); 20 U.S.C. § 4402(4); 25 U.S.C. § 1801(a)(1); 25 U.S.C. § 1903(3); 25 U.S.C. § 4103(10); 25 U.S.C. § 5304(d); 42 U.S.C. § 3002(26); 42 U.S.C. § 12511(19).

- The State additionally argues that Congress intended the exemption for "Indian[s] in Indian country" to extend only to activity that is otherwise encompassed by tribal sovereign protections against state regulation, which does not include King Mountain's cigarette sales. Relying on legislative history, the State argues that Congress intended that the CCTA would not override those existing sovereign protections, and added the exemption for an "Indian in Indian country" for that purpose alone. But as the district court observed, the legislative history also includes evidence "that Congress differentiated between enforcement against tribes and enforcement in Indian country" and therefore "intended for the exemption to apply in both circumstances." Mountain Tobacco Co., 2016 WL 3962992, at *6. The legislative history, which points in no particular direction, does not defeat our interpretation of the statute's plain language.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is hereby **REVERSED** with respect to the grant of summary judgment for King Mountain and the denial of summary judgment for the State on the PACT Act claim, and **AFFIRMED** in all other respects. The case is remanded for entry of summary

30

judgment for the State on the PACT Act claim, and for consideration of what

additional relief, if any, is appropriate.